(November 13, 1911.)

## IDAHO-WESTERN RAILWAY CO., Appellant, v. COLUMBIA CONFERENCE OF EVANGELICAL LUTHERAN AUGUSTANA SYNOD, Respondent.

[119 Pac. 60.]

EMINENT DOMAIN—RAILROAD RIGHT OF WAY—VALUE OF PROPERTY TAKEN—COMPETENCY OF WITNESSES TO PROVE VALUE—DAMAGE TO PROPERTY REMAINING AFTER THE SEVERANCE—USE TO WHICH PROPERTY HAS BEEN APPLIED—SPECIAL USES TO WHICH APPLICABLE—EVIDENCE AS TO VALUE—EVIDENCE OF SPECIAL USES—ABSENCE OF MARKET VALUE — NATURE OF IMPROVEMENT PROPOSED — DAMAGE FROM NOISE AND SMOKE—CROSS-EXAMINATION AS TO PREVIOUS SALES—INJURIOUS USE TO WHICH PROPERTY TAKEN MAY BE DEVOTED.

(Syllabus by the court.)

1. It is not necessary to qualify a witness as an expert before allowing him to testify as to the value of property sought to be taken under condemnation proceedings or the damage that will be sustained to the remaining property by reason of the severance of the part taken. He must necessarily claim to have some knowledge on the subject before testifying as to values, and such knowledge and information may be tested on cross-examination by the condemnor, and his means of knowing values and the reasons which lead him to make his estimate as to the value of the property and the damages which will be sustained may be disclosed on cross-examination, and the weight to be given to his evidence is a proper subject for the consideration of the jury.

2. In estimating the value of property taken for public use, it is the market value of the property which is to be considered, and the market value of property is the price which it will bring when it is offered for sale by one who desires but is not obliged to sell it, and is bought by one who is not obliged to have the property.

3. Where property sought to be taken under condemnation proceedings has no market value, evidence is admissible to show that the property is valuable for some peculiar or specific purpose or is especially valuable on account of its formation, location, natural or artificial adaptability to a particular use or to the peculiar use to which it is then applied, and in such a case evidence to the foregoing effect is admissible and may be considered by a jury as a proper subject of inquiry in arriving at a just estimate of the value

Points Decided.

to be placed upon the property taken and the damage that will be sustained by reason of severing the same from the property remaining.

4. The constitution prohibits the taking of the property of another for any use until just compensation has been paid therefor, and this must be done whether the property has a market value or not. In every case, a fair and just compensation must be ascertained, and this should be done as nearly as possible in the same manner and by taking into consideration the same facts, circumstances and elements of value which would be taken into account by the vendor and purchaser if they were bargaining between themselves as to the fair price which the one would accept and the other would pay for the property.

5. Under the statute of this state (sec. 5220, Rev. Codes), where a condemnor is seeking to take a portion of a larger tract of land for a public use, it is proper and necessary to take into consideration and to introduce evidence to show the damage that will be sustained to the remaining parcel of land "by reason of its severance from the property sought to be condemned" and the "construction of the improvement proposed" by the condemnor.

6. An educational institution, commonly known and designated as a college, is not ordinarily a commercial or money-making institution, and cannot be said to have a market value in the ordinary and legal acceptation of that term; and where property devoted to such use is sought to be taken by a railroad company under the power of eminent domain, it is proper to introduce proofs showing the character of the location, its special fitness and adaptability for the uses to which it is then or may be devoted, the state of development and improvement of the property, the nature of the improvements, and the depreciation that will result to the remaining portion of the property after the severance therefrom of the part taken under condemnation, and such evidence is proper for the consideration of the jury in arriving at the true value of the property to be taken and the damage that will be sustained.

7. The noise usually incident to the operation of railway trains should not be taken into consideration as an element of damage in ordinary condemnation cases, for the reason that the taking of property for railroad purposes is authorized by the constitution and statute and condemnation is allowed therefor, and the noise of operating the road goes along with the use. Where, however, the property is already devoted to such a special and peculiar use that the taking of a part brings the use and the incidental noise so near to the remaining property as to render the noise a private nuisance to the owner of the remaining property except for the condemnation, and greatly depreciates its value for such special use, the question

of noise may be considered in ascertaining the damage that will be suffered to the remaining property after the severance.

8.    Where a witness in a condemnation proceeding testifies on behalf of the land owner that the land sought to be taken is of a certain value, it is not error for the witness to be allowed to thereafter explain that he bases his estimate upon the fact that the land could be subdivided into town lots and would for such purpose sell for the amount fixed by him as the value of the property.

9.    Where a witness was called by the condemnor in condemnation proceedings and testified to what he considered to be the value of the property sought to be condemned and that he had advised the owner of the property to settle with the company, it was not prejudicial error to allow the land owner on cross-examination to ask the witness if he had not sold to the plaintiff company his residence which was situated between the center of the city and the property being condemned, and if he had not received the sum of $25,000 for such property, where it appeared that such was in fact the case. Such evidence was admitted on the theory that it tended to show the prejudice and bias of the witness in favor of the condemning company.

10.    Where a railroad company is condemning a part only of a tract of land and does not indicate or stipulate the specific manner in which it intends to use the property or the number of tracks it proposes to lay or whether it will use the land for switching purposes, it is competent and proper for the land owner to introduce evidence to show the probable damage that it will sustain by reason of the most numerous and injurious use to which the railroad company might lawfully put the property under its condemnation for railroad purposes.

11.    Instructions examined and *held* sufficient, when read as a whole, to substantially state the law of the case, and that they contain no prejudicial error.

APPEAL from the District Court of the Eighth Judicial District for Kootenai County.    Hon. Robert N. Dunn, Judge.

Action in condemnation.    Judgment for the defendant in the sum of $9,000, from which the plaintiff appeals.    *Affirmed.*

Charles L. Heitman, J. L. McClear, and F. M. Dudley, for Appellant.

By the statute (sec. 5220, Rev. Codes), the recoverable damages are only those which accrue to the untaken portion of the

land.   Injuries to business or to a use of the land, if they are not injuries to the land, are not recoverable.   (*Philadelphia Ball Co. v. Philadelphia,* 192 Pa. 632, 73 Am. St. 835, 44 Atl. 265, 46 L. R. A. 724, and cases cited; *St. Louis etc. R. Co. v. Knapp, Stout & Co.,* 160 Mo. 396, 61 S. W. 300, 304, 305; *Kansas City etc. Ry. Co. v. Anderson,* 88 Ark. 129, 113 S. W. 1030, 1032, 16 Ann. Cas. 784; *Stadler v. City of Milwaukee,* 34 Wis. 98 et seq.; *Cook & R. Co. v. Sanitary District,* 177 Ill. 599, 52 N. E. 870, 872, 873; *Cobb v. Boston,* 109 Mass. 438; *Sawyer v. Commonwealth,* 182 Mass. 245, 65 N. E. 52, 59 L. R. A. 726; *Ranlet v. Concord,* 62 N. H. 561; *C. P. R. R. Co. v. Pearson,* 35 Cal. 247, 263; *Pause v. City of Atlanta,* 98 Ga. 92, 58 Am. St. 290, 26 S. E. 489; *In re Department of Public Parks,* 53 Hun, 280, 6 N. Y. Supp. 750; 15 Cyc. 733; 2 Lewis, Eminent Domain, 3d ed., sec. 727.)

The adaptability of a parcel of land which is material is only that adaptability which gives it a special value, which adds to its worth on the market.   (2 Lewis, Eminent Domain, 3d ed., sec. 707, and cases cited; *City of Santa Ana v. Harlin,* 99 Cal. 538, 34 Pac. 224; *Conness v. Commonwealth,* 184 Mass. 541, 69 N. E. 341; *Sacramento S. R. Co. v. Heilbron,* 156 Cal. 408, 104 Pac. 979.)

Respondent's witnesses had not qualified themselves to give testimony as to the special value of the land.   (*Conness v. Commonwealth,* 184 Mass. 541, 69 N. E. 341; *C. M. & St. P. R. Co. v. Alexander,* 47 Wash. 131, 91 Pac. 626; *In re Western Avenue,* 57 Wash. 290, 106 Pac. 901; *Laing v. United etc. Canal Co.,* 54 N. J. L. 576, 33 Am. St. 682, 25 Atl. 409; *Friday v. Penn. Ry. Co.,* 204 Pa. 405, 54 Atl. 339; *Town of Hingham v. United States,* 161 Fed. 295, 88 C. C. A. 341.)

"Opinions should be confined to the property in question . . . . also to the question of market value, and not the value to the owner or for particular uses."   (2 Lewis, Eminent Domain, 3d ed., secs. 654, 707.)

Noise caused by the railroad properly operated could not be considered as an element of damage.   The constitution of Idaho does not prohibit the damaging of property.   (*Chicago v. Taylor,* 125 U. S. 161, 8 Sup. Ct. 820, 31 L. ed. 638;

*Brown v. Seattle,* 5 Wash. 35, 31 Pac. 313, 32 Pac. 214, 18 L. R. A. 161, and cases cited.)

The respondent would have no claim for damages therefor, so long as the road was operated in a proper manner. (*Smith v. St. P. M. & M. Ry. Co.,* 39 Wash. 355, 109 Am. St. 889, 81 Pac. 840, 70 L. R. A. 1018, and cases cited; *Twenty-second Corp. etc. v. Oregon S. L. R. Co.* (Or.), 103 Pac. 243, and cases cited; *Baker v. Boston El. Ry. Co.,* 183 Mass. 178, 66 N. E. 711.)

Injuries consisting of annoyances to the occupants, injuries to the business carried on, etc., are *damnum absque injuria.* (*Helmer v. Colorado S. P. Co. etc.,* 122 La. 141, 47 So. 443; *Omaha & N. P. R. Co. v. Janecek,* 30 Neb. 276, 27 Am. St. 399, 46 N. W. 178; *Sacramento S. R. Co. v. Heilbron,* 156 Cal. 408, 104 Pac. 979.)

There is no reason found in the testimony for the extraordinary instruction given to the jury that they should assume the most injurious construction or occupation reasonably possible. (2 Lewis, Eminent Domain, 3d ed., sec. 712; *Atlantic C. Ry. Co. v. Postal T. C. Co.,* 120 Ga. 268, 48 S. E. 15, 1 Ann. Cas. 734.)

Evidence as to prices which a condemning corporation has paid for right of way which it must have are not competent or admissible. (2 Lewis, Eminent Domain, 3d ed., sec. 667; *Peoria etc. Co. v. Peoria Ry. Co.,* 146 Ill. 372, 34 N. E. 550, 21 L. R. A. 373; *Port Townsend S. R. Co. v. Barbare,* 46 Wash. 275, 89 Pac. 710.)

Refusal to permit evidence of specific sales was error. (2 Lewis, Eminent Domain, 3d ed., sec. 662; *Eldorado etc. R. Co. v. Everett,* 225 Ill. 529, 80 N. E. 281; *Port Townsend S. R. Co. v. Barbare,* 46 Wash. 275, 89 Pac. 710.)

McNaughton & Berg, and H. M. Stevens, for Respondent.

"Fixtures upon the property taken must be valued and paid for as part of the real estate, and any depreciation in the value of fixtures upon the part not taken is to be taken into consideration, the same as damage to the soil itself." (2 Lewis, Eminent Domain, 3d ed., sec. 728.)

"When part is taken, just compensation includes damage to the remainder." (2 Lewis, Eminent Domain, 3d ed., sec. 686.)

"If property has no market value, then it is a question of real or actual value, and each fact bearing upon such value may be shown, and those acquainted with the property and its surroundings may give their opinion of its value, though not experts in a strict sense." (2 Lewis, Eminent Domain, 3d ed., sec. 706; *DeBuol v. Freeport & Miss. River Ry. Co.*, 111 Ill. 499.)

Where property, by reason of being applied to a particular use, has a particular value to the owner, that value is to be ascertained and allowed as compensation. (*Sanitary Dist. v. Pittsburg, Ft. W. & C. Ry. Co.*, 216 Ill. 575, 75 N. W. 251; *Portneuf Marsh Valley Irr. Co. v. Portneuf Irr. Co.*, 19 Ida. 483, 114 Pac. 19.)

The respondent was entitled to the damage to the balance of the tract occasioned by the segregation of the part taken and the operation of a steam railroad thereon. (2 Lewis, Eminent Domain, 3d ed., secs. 66–68; *Pumpelly v. Green Bay Co.*, 13 Wall. 166, 20 L. ed. 557.)

"As damages must be assessed once for all, and as the taker may obviate all difficulty by stipulating to construct the work in a specified way, the damage should be assessed on the basis of the most injurious mode of construction that is reasonably possible." (2 Lewis, Eminent Domain, 3d ed., p. 715.)

AILSHIE, J.—This action was brought by the appellant to condemn a strip of land 100 feet in width along the southwest side of the premises belonging to the respondent corporation and which is occupied by it for college purposes. The respondent is maintaining and conducting what is known as the Coeur d'Alene College in the suburbs of Coeur d'Alene City, and the lands sought to be condemned are a part of the college campus. On the filing of the complaint notice was issued and served, and thereupon the court appointed commissioners to assess the damages. The commissioners met and

heard the proofs and made and filed their report. The majority of the commissioners found that the value of the land to be taken was $3,000 and that the damage that would be caused to the remainder of the land by reason of the severance and taking of the part condemned would be $2,000. The college corporation declined to accept the amount allowed by the board, and the case was thereafter tried in the district court, and the jury returned a verdict for the sum of $5,000 as the value of the property to be taken and $3,900 as the amount of damages that would be sustained to the remainder of the property by reason of the severance, and $100 for fences and cattle-guards. Judgment was thereupon entered and this appeal has been prosecuted by the condemnor.

The only issue that was tried in the district court was the question as to the amount of damages which the college corporation would sustain by reason of the taking and the severance of the land condemned from the remainder of the tract. The appellant has assigned ninety and nine errors, and inferentially concedes that the court was correct in the balance of his rulings. We shall not be able to take up these assignments of error in detail and consider or discuss them all in a written opinion. We have examined them in detail, however, and will consider the most prominent and important ones and will treat in this opinion such assignments as seem to merit consideration in a written opinion.

The chief complaint made by appellant is against various rulings of the trial court in permitting the president of the college, Doctor Jesperson, to testify concerning the investigation that was made by the committee before determining to acquire this particular tract for college purposes and to give his opinion as to the needs of a college campus and the effect upon the value of the college property that the appearance of the campus has, and to describe the college and tell of its condition and the state of its growth and the increase in students, and to also testify as to depreciation in the value of the property for college purposes if the land sought to be condemned be taken and used for railroad purposes; and that if the use which the condemnor intended to make of the prop-

erty should render it necessary for the college corporation to sell its property in order to purchase and locate somewhere else, the buildings and improvements placed upon the land, aggregating about $40,000, would only sell for a very small percentage of the cost price for any other use or purpose than college purposes. Doctor Jesperson was also allowed to testify to the damaging and detrimental effect upon the college work that would result from the noise of locomotives and trains passing back and forth over this ground so near to the college buildings. Other witnesses were allowed to testify along the same lines and to the same effect. Teachers, instructors and college professors were called and testified along the same general lines, and the music teacher was allowed to testify as to the effect that noise of trains and locomotives so near would have upon the giving of musical instruction in the college and the conducting of that line of college work.

The greater number of the errors assigned on this appeal go to the admission of evidence of the character and to the general effect above mentioned. We are now called upon to determine whether or not this class of evidence was admissible on behalf of respondent or prejudicial to the appellant.

In the first place, appellant urges that the witnesses who were called on behalf of respondent to testify as to the value of the property to be taken and the damage that would be sustained were not qualified and competent to testify upon the subject of value. We do not consider that the objection is well taken. The appellant had the privilege of cross-examining these witnesses, which it exercised to the full extent, and this examination disclosed the extent of the knowledge and information that the several witnesses had on the subject of values and the reasons which led them to make the estimates they did. The jury was competent, and indeed that was its province, to determine the weight to be given the evidence of the several witnesses on this subject. Evidence of value and damages in such cases as this should not be limited or confined to so-called expert witnesses; indeed, it could not be, for the reason that it would be practically impossible to tell just what would constitute an expert in such matters. A

witness must necessarily claim to know something about the value of such property before he can fix any value, and the extent and value of that knowledge will be fully disclosed on cross-examination. The jury are well qualified to determine the weight to be given the evidence of the several witnesses after they have been cross-examined as to their means of knowledge and the sources of their information upon which they base their estimates. (2 Lewis on Eminent Domain, sec. 654; sec. 435, original edition.)

It is argued by appellant that the only line of evidence that was admissible was such as would show the market value of the property to be taken, and that any other evidence as to special uses to which the owner desired to put the property or to which it might be adaptable was improper and inadmissible. In *Portneuf-Marsh etc. Co. v. Portneuf Irrigating Co.,* 19 Ida. 483, 114 Pac. 19, this court in determining the rule for the assessment of damages in such cases quoted with approval the following extract from Lewis on Eminent Domain, vol. 2, 3d ed., sec. 706:

"In estimating the value of property taken for public use, it is the market value of the property which is to be considered. The market value of property is the price which it will bring when it is offered for sale by one who desires but is not obliged to sell it, and is bought by one who is under no necessity of having it. In estimating its value all the capabilities of the property and all the uses to which it may be applied or for which it is adapted are to be considered, and not merely the condition it is in at the time and the use to which it is then applied by the owner. It is not a question of the value of the property to the owner. Nor can the damages be enhanced by his unwillingness to sell or because of any sentiment which he has for the property. On the other hand, the damages cannot be measured by the value of the property to the party condemning it, nor by its need of the particular property."

Following that quotation, this court said:

"It is often difficult to determine the market value of property, for the reason that there may be no general demand for the same, or it may be that the property is only valuable for

a specified purpose, as was the case here, and a value can only be estimated upon the basis of the fitness of the property for the specific use on account of its formation, its location, or other specific, natural or artificial adaptability to the use for which it is sought. In a case, therefore, where no general market value can be ascertained, these latter elements must be taken into consideration and are proper subjects of inquiry in arriving at the value of the property.''

In the same opinion we quoted with approval from *Ranck v. Cedar Rapids,* 134 Iowa, 563, 111 N. W. 1027. In the latter case, the Iowa court was considering the competency of evidence admitted and the measure of damages applicable in a case where the condemnor was seeking to condemn a lot for an approach to a bridge. The land owner had fitted up a livery barn and undertaking rooms on the property and had carried on business there for some sixteen years, and had established a reputation for his business and location, and on the trial of the case the court admitted evidence showing the length of time the land owner had maintained his business thereon and the character and nature of the business he was conducting, ''and that the situation was well adapted to and valuable for such business,'' and ''that the long use of the premises for such use tended to increase its value therefor.'' The supreme court sustained the action of the trial court in admitting the evidence along this line and cited a long line of authorities sustaining its position. Among that list of authorities,—which we will not reproduce here,—will be found cases holding to the following effect: (1) That evidence is admissible to show the adaptation and value of the property for any legitimate purpose or business, even though it has never been so used, and the owner has no present intention to devote it to such use; (2) that it is proper for the owner to prove the presence and value of undeveloped mineral deposits in the land taken; (3) that the cost and value of a house and other improvements on the premises may be shown; (4) that the value of a salt well, though not being utilized, may be shown; (5) that the value of trees on the land may be proven; (6) that the value of growing crops lost by reason of the con-

demnation may be proven; (7) that the kind and value of crops produced in other years may be proven, and that the income which might be derived from the property is proper to be shown; (8) that the owner has an established and lucrative business on the premises may be proven; (9) that the price paid for the property is a pertinent fact for the consideration of the jury; (10) that evidence of cost as affecting estimates of value of property of the kind shown to be taken is admissible; (11) that loss and inconvenience which must be incurred by the interruption of business or its enforced removal to another location may be introduced as a material fact bearing upon the value of the property. We do not wish to be understood as approving the holdings of all these cases, but rather cite them to show the length to which the courts have gone in the admission of evidence in such cases.

An examination of these various holdings will show that evidence along the lines indicated has been admitted in the several states for the purpose of advising the jury of the true situation of the property, and its utility and value for the various and several uses to which it may be placed by its owner or a possible purchaser. After citing the cases in support of the various holdings, the Iowa court adds the following comment which seems to us logical and reasonable and a very practical view to take in such matters:

"The cases we have thus far cited may not all be of controlling authority in this state, but they serve well to illustrate the marked tendency of the courts to liberality in the admission of proof of any and all facts having any legitimate tendency to aid the jury in arriving at the value of the property appropriated under power of eminent domain. The fact that the owner is denied the ordinary right to refuse to sell his property, except at his own price and on his own terms, affords no reason for awarding him more than a just compensation; but it does afford good reason why he should be given every opportunity to disclose to the jury the real character of the property—its location; its surroundings; its use; its improvements, if any, and their age, condition and quality; its adaptability to any special use or purpose; its

productiveness and rental value; and, in short, everything which affects its salability and value as between buyers and sellers generally. Though acting under legal compulsion, the owner stands in some degree in the attitude of a seller of property, the price of which is to be fixed and settled by the jury, and, so far as he can do so within the bounds of truth and fairness, he is entitled to display all the attractive and desirable features of such property which may tend to enhance its value in the market, and thus secure the highest obtainable compensation therefor. The party condemning has, of course, the correlative right to rebut the showing thus made by disputing its truth and by proof of other facts which affect the value of the property unfavorably. It is true that market value and intrinsic value are not necessary equivalents, but proof of the latter is often competent evidence for consideration in determining the former.''

Justice Deemer dissented from the majority opinion in the foregoing case, but his dissent was placed upon the ground that the entire property was taken in that case; which in his opinion renders such inquiries improper, 'and so the point made by the dissent in that case is not involved in the present case, for the reason that the condemnation here did not seek to take but a small portion of the entire tract, and so really the dissenting opinion in the Iowa case adds force to the majority opinion so far as the point involved is applicable to the case at bar.

In *Sanitary District of Chicago v. Pittsburg, Ft. W. & C. Ry. Co.*, 216 Ill. 575, 75 N. E. 248, the Sanitary District sought to condemn a portion of the station and terminal grounds in the city of Chicago used and occupied by the P. & Ft. W. & C. Ry. Co. and the Pennsylvania Railroad Co., and the question of the manner of establishing the value of the property arose and was discussed at great length. The court, among other things, said:

''Where lands proposed to be taken have a market value, such value is the standard of just compensation because it will give to the owner all he is entitled to under the law. But that method of valuation cannot be applied to property

which has no market value. The constitution and the law require that the owner of property shall receive such compensation that he will be as well off after the taking as he was before. To do that it is necessary to determine what the property is worth to the owner, and unless he receives what it is worth to him he does not receive just compensation. It is matter of common knowledge that such property as this and devoted to such a use is not bought and sold in the market or subject to sale in that way, and that such property has no market value in a legal sense. The property being devoted to a special and particular use, the general market value of other property was not a criterion for ascertaining compensation, although it might throw some light on the actual value." (See, also, *Pumpelly v. Green Bay Co.*, 13 Wall. 166, 20 L. ed. 557.)

The foregoing discussion naturally brings us to an inquiry as to what the statute of this state says with reference to assessing damages in such cases. Sec. 5220 of the Rev. Codes provides as follows:

"The court, jury, or referee must hear such legal testimony as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess:

"1. The value of the property sought to be condemned, and all improvements thereon pertaining to the realty, and of each and every separate estate or interest therein; if it consists of different parcels, the value of each parcel and each estate or interest therein shall be separately assessed;

"2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff;

"3. Separately, how much the portion not sought to be condemned, and each estate or interest therein, will be specially and directly benefited, if at all, by the construction of the improvement proposed by the plaintiff; and if the benefit shall be equal to the damages assessed, under subdivision 2,

the owner of the parcel shall be allowed no compensation except the value of the portion taken; but if the benefit shall be less than the damages so assessed, the former shall be deducted from the latter, and the remainder shall be the only damages allowed in addition to the value. . . . . ''

It will be observed by the foregoing statute that under the laws of this state three facts are to be determined in a condemnation suit where it is not sought to take the entire tract of land but only a portion thereof: First, the value of the property sought to be condemned together with all the improvements thereon pertaining to the realty; second, if the property sought to be condemned constitutes only a part of the larger parcel, the damages which will accrue to the remaining portion by reason of the severance must be assessed; and, third, if the property sought to be condemned constitutes a part of a larger parcel, the benefits which will accrue to the remaining portion after the severance of the part condemned must be ascertained and assessed and be deducted from the damages that will be sustained by the severance. Our statute therefore provides not only for the assessment of damages for the value of the property taken, but, in addition thereto, provides for the assessment of damages and benefits sustained and received by the remaining parcel of land after the severance, and which is caused ''by reason of its severance from the property sought to be condemned'' and the ''construction of the improvement proposed'' by the condemnor. Under this statute, it was proper for the land owner to introduce such evidence and proofs as were available, tending to show the depreciation in value which would result to the remaining portion of its land after the severance of this particular tract, and in doing so the statute specifically authorizes taking into consideration ''the construction of the improvement in the manner proposed by the plaintiff.'' This latter provision of the statute clearly authorizes the land owner to introduce evidence showing the damage and injury that the particular improvement or structure for which the condemnation is sought will cause to the remainder of his property. The statute requires the condemnor to disclose the purpose for

which he is seeking to condemn the property and the general nature and character of the improvement or structure he expects to erect in order to bring himself within the constitution and statute (sec. 14, art. 1, Const.; sec. 5210, Rev. Codes), and entitle him to maintain his condemnation proceeding.

A may be using his property for a purpose that would in no manner be disturbed or damaged by reason of the construction and operation of a railroad along and over a portion of such property, while B may be using his property for a purpose which would be partially or wholly destroyed by reason of the construction and operation of a railroad along and over a part of such land. So the question of the use to which the property is to be applied, the nature of the improvement, and the manner in which the improvement is to be made and the use carried on, becomes important.

In the case at bar, the respondent corporation is maintaining and operating an educational institution. This is not a commercial or money-making institution in the ordinary sense of that term, and yet it is one of the most commendable and laudable purposes to which men can apply themselves, and the use is one of the most worthy and legitimate uses to which property can be applied. The constitution recognizes the fostering and maintaining of educational institutions as one of the highest uses, and declares it essential to the stability of our form of government. (Sec. 1, art. 9.) It would be purely a production of the imagination to talk about a college site or college property having a market value. "A reasonably prudent business man" is not going to invest anything in those institutions as a business or commercial enterprise,— whatever he invests in such an institution, he does it solely as a donation. We know there is no such a thing as a market value, within the ordinary and legal acceptation of that term, for such property. This is a sectarian or denominational institution, and it is a matter of such common knowledge that we would have no hesitancy in taking judicial notice of the fact that such institutions are dependent upon donations and endowments and those who are charitably and philanthropically inclined, for their existence, support and maintenance.

These institutions partake largely of an eleemosynary character, and yet the property built up for such purposes is ordinarily expensive and becomes of great value for the specific work and purpose for which it is established. The fact that there is no market value for such property affords no justification whatever for the taking of the property without payment of just compensation. Whenever the property is of such character and nature that it has no market value, its value for the uses and purposes to which it is being devoted and to which it is peculiarly adaptable may be shown, and the authorities above cited fully sustain and justify this position. It was competent for the college corporation to introduce evidence to show that the construction and operation of a steam railway line along and over its campus grounds would be a permanent and lasting detriment to the remaining college property, and that it would impair its usefulness and mar its inviting situation and prospect. The evidence that was introduced along this line was competent and admissible under the statute.

Counsel for appellant contend, however, that evidence of this kind of injury and damage was not admissible, for the reason that the constitution of this state provides simply for the payment of "a just compensation" for the "*taking*" of private property and does not require the payment for *damages* sustained. Counsel recites the provisions of the various constitutions and the history of their adoption in the several states. We quote the following from appellant's brief as an interesting and instructive review of the adoption of this damage provision in the several constitutions:

"The constitution of Idaho, unlike the constitutions of Alabama, Arkansas, California, Colorado, Georgia, Illinois, Kentucky, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, North Dakota, Oklahoma, Pennsylvania, South Dakota Texas, Utah, Virginia, Washington, West Virginia and Wyoming, does not prohibit the damaging of property. It provides simply that 'private property may be taken for public use, but not until a just compensation, to be ascertained in a manner prescribed by law, shall be paid there-

for.' The omission of the damage clause is significant. Prior to 1870 that clause was not to be found in any constitution, and the courts had uniformly held that under the prohibition against taking, consequential damages were not recoverable. The Ohio and Kentucky courts had given an unusually wide definition as to what constituted a taking, but we believe there was no dissent from the general proposition that consequential injuries were *damnum absque injuria*. It was felt that this limitation frequently resulted in hardship; and in 1870, Illinois adopted a constitutional amendment providing that private property should not be taken *or damaged* for public use without compensation. This provision was soon followed in many of the states. By West Virginia in 1872, by Arkansas and Pennsylvania in 1874, by Alabama, Missouri and Nebraska in 1875, by Colorado and Texas in 1876, by Georgia in 1877, by California and Louisiana in 1879; all prior to the adoption of the Idaho constitution. The effect of the damage clause was repeatedly determined by various courts prior to 1889, including the United States supreme court. (*Chicago v. Taylor*, 125 U. S. 161, 8 Sup. Ct. 820, 31 L. ed. 638.) And see list of cases and history of amendment in *Brown v. Seattle*, 5 Wash. 35, 31 Pac. 313, 32 Pac. 214, 18 L. R. A. 161.

"The same year that the Idaho constitution was adopted, the states of Montana, North and South Dakota and Washington adopted constitutions, and all included therein the damage clause. And when the convention in Idaho framed the constitution of that state, omitting such clause, and it was so adopted, the conclusion must be that the omission was deliberate and because the people of that state believed that, owing to the conditions there existing, the public interests demanded that the additional burden of paying consequential damages should not be imposed on those taking property for public uses. And there is nothing in the Idaho constitution requiring compensation except for the taking of property."

While our constitutional provision omits the words "or damaged," which are found in many constitutions immediately following the word "taken" as it occurs in our con-

stitution, this provision does not prevent the legislature from adding the requirement that compensation be made for the damages sustained to the remaining property by reason of the taking; in other words, the omission of the words "or damaged" from the constitution does not prevent the legislature from imposing a condition to that effect by statutory enactment. It is true that the legislature in this state has not gone to that extent; in other words, it has not authorized the collection of damages under the eminent domain statute previous to the taking, where there is no actual physical taking of the property, but it has provided that the damages done to the remaining portion of the property from which the condemned portion is taken shall be paid before the condemnor is allowed to take the property sought.

The appellant has in this same connection made complaint of the action of the court in permitting evidence to be introduced as to the damage that may be sustained from the noise of passing trains and engines, and insists that this is a mere incident to the use of the property and that it necessarily follows in the ordinary use of railroad property, and cannot therefore be taken into consideration in estimating damages. It is argued that the college corporation might sustain the same damage from a railroad being operated over adjoining property acquired from someone else, and still would not be entitled to recover damage for such noise or disturbance. This may all be conceded, and yet it in no way militates against the right of the respondent corporation to have the jury consider the question of disturbance from noise by reason of constructing and operating the railroad over land which now belongs to the college corporation and which the railroad seeks to take for such purposes. The construction of the improvement here proposed is a railway line. A result of the construction and operation of that line will be noise from passing trains and locomotives, and that noise, according to the proofs, will be a serious detriment to the peculiar business of this corporation. It will amount to a private nuisance to the school, except for the condemnation. The noise usually incident to the operation of railway trains

should not be considered as an· element of damage in the ordinary case, for the reason that such a purpose is lawful and condemnation is allowed therefor, and the noise of operating a railroad goes along with the use. Where, however, the property is already devoted to such a special and peculiar use that the taking of a part brings the use and incidental noise so near as to render the noise a private nuisance to the owner of the remaining property, except for the condemnation, and greatly depreciates its value for such special use or renders it valueless, this element ought to be considered in ascertaining the damage that will be suffered to the remaining property after the severance.

This question was under consideration by the supreme court of Massachusetts in *Baker v. Boston Elevated Ry. Co.*, 183 Mass. 178, 66 N. E. 711. There it was sought to condemn property for an elevated street railway. The land owner offered evidence to show the damage he would sustain by reason of the noise incident to the operation of the railroad. The supreme court of Massachusetts was called upon, apparently for the first time, to construe chap. 548, sec. 8, of the statute of 1894 of that state. While that statute is very different in form from our statute (sec. 5220), still in substance and effect it is very similar to ours in so far as it goes. Their statute provides for the assessment of damages that will be sustained and the assessment of benefits or improved value by reason of the location or construction or maintenance of the railway, and the land owner shall be given an amount equal to the sum which the damages he will sustain exceeds the benefits he will receive. The court concluded in that case that the land owner was entitled to have the question of noise that would be caused by the constant running of cars along his premises considered as an element of damage in establishing the compensation to be allowed him.

In *Omaha Southern Ry. Co. v. Beeson*, 36 Neb. 361, 54 N. W. 557, the supreme court of Nebraska held that evidence of annoyance of defendant on account of smoke and ashes from the engines of passing trains near his residence was properly admitted. The court there said: "If the house was

rendered intrinsically less valuable by reason of dust and smoke from passing engines, that fact was admissible, not as an independent element of damage but to be taken into consideration in determining the value of the entire tract as it then was burdened by the right of way.''

One witness that was called on the part of the respondent in this case.testified to what he considered to be the value of the land sought to be taken, and later on, in explaining his evidence and giving his reasons for placing such a value on the property, stated that it would be worth so much if divided up and placed on the market as town lots. We fail to see any serious error in this evidence. The jury were able to judge of the value of the evidence thus given and the speculative character of the evidence. On the other hand, we cannot say that it was improper to allow witnesses to testify to such a use to which the property could be devoted. (2 Lewis on Eminent Domain, 3d ed., sec. 712; *Sanitary Dist. of Chicago v. Pittsburg, Ft. W. & C. Ry. Co.,* 216 Ill. 575, 75 N. E. 249; *Ranck v. Cedar Rapids,* 134 Iowa, 563, 111 N. W. 1027.)

In *Omaha Southern Ry. Co. v. Beeson, supra,* the land owner was permitted to introduce evidence showing that his tract of land before the condemnation was so situated that it could have been divided up into subdivisions and sold as town lots, but that after the condemnation such could not be done. The court said: ''If the railroad track was so constructed as to render subdivision impracticable and the value of the property thereby impaired, such fact amounts to a direct injury to the property for which the owner may recover in a condemnation proceeding.'' The foregoing was said with reference to the property remaining after the condemnation. Here the evidence was given with reference to the land actually taken. In this case the evidence was perhaps more speculative.

Appellant complains seriously of the action of the court in permitting the respondent to cross-examine the witness Hamilton who was called by appellant to testify as to the reasonable market value of this property. Mr. Hamilton is a resident of Coeur d'Alene City and cashier of the Coeur d'Alene

Bank & Trust Co., and testified that the land was worth about $1,000 an acre. He also testified that he had written a letter to the president of the college urging the president to settle with the railroad company. On cross-examination, counsel for the respondent was allowed to ask the witness if he did not formerly live between the college property and the center of the city and in the way of the line of railroad. He answered that he did. They then asked him if he did not sell his residence property to the railroad company, to which he answered in the affirmative. He was then asked if he did not get $20,000 for his place. Objection was made to that, and the court held that it was not admissible as fixing a standard of value. Counsel for respondent urged, however, that the evidence was admissible for the purpose of showing the credibility of the witness and his interest or bias in connection with the railroad company and this transaction, and the court admitted the evidence on that theory and for that purpose alone. Pursuing this course of cross-examination, it later developed that Mr. Hamilton had sold his residence to the railroad company for $25,000. It is now urged by the respondent that this evidence was admissible as tending to show the relation between the witness and the railroad company and his bias in favor of the company. They argue that the receipt by the witness of $25,000 from the company for his property would tend to have a persuasive influence on his mind when it came to fixing values on property which would have to be paid by the railroad company. However this may be, we do not think the introduction of this evidence was of such a prejudicial character as to have been injurious to the appellant or to call for a reversal of the judgment.

The appellant also complains of the action of the court in allowing witnesses on behalf of the appellant to testify as to the probable annoyance and damage that would be produced to the school and school property by the use of this land for railroad purposes in the event it should lay a double track or should use the ground for switching purposes. The objection made to this line of evidence was based on the grounds that it did not appear in the case that the railroad company

intended to do anything more than build a single line of track over this ground. As we understand the rule in such cases, the company might have bound itself by its pleadings and proceedings, or by stipulation, in the action to maintain only a single track and not to use the ground for switching purposes. It did not, however, see fit to do this. It was competent, therefore, for the land owner to prove the damage that it would probably sustain by reason of the most numerous and injurious use to which the condemning party might lawfully put the property under its condemnation for railroad purposes. This rule is very clearly stated by Lewis on Eminent Domain, vol. 1, 3d ed., sec. 391.

A number of errors have been assigned as touching the action of the court in giving certain instructions and refusing to give others requested by the appellant. What we have said with reference to the evidence that was admitted in this case and the rulings of the court in the course of the trial render it unnecessary for us to discuss the instructions. The court's instructions to the jury were in line with his rulings on the admission of evidence. We have examined the instructions, and, taken as a whole, we do not think they were in any manner unfair or prejudicial to the appellant.

The judgment in this case seems rather large, and yet it is amply justified by the evidence. Indeed, many witnesses placed the value of the property and damage that would be sustained to the remaining property after the severance much above that found by the jury. We fail to find anything in the record in this case that would justify us in disturbing the judgment. The judgment must, therefore, be affirmed, and it is so ordered, with costs in favor of the respondent.

Stewart, C. J., and Sullivan, J., concur.