# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 43452

ADA COUNTY HIGHWAY DISTRICT, a
body politic corporate of the State of Idaho,

    Plaintiff-Appellant,

v.

BROOKE VIEW, INC. dba THE
SENATOR, INC., an Idaho corporation,

    Defendant-Respondent,

and

BENCH SEWER DISTRICT; JOE J. HON
AND WILLIAM A. HON dba FRANKLIN
WATER COMPANY; OVERLAND
WATER COMPANY, an Idaho company;
TILLIE MAE SAXTON, a widow;
VINCENT LEE HUMPHREYS and
ESTHER C. HUMPHREYS, husband and
wife; KENNETH RICHARDSON and
EFFIE R. RICHARDSON; and all
unknown lessees and tenants in possession
of any or all of the property which is subject
to this action, and any other person or
entity, who has or may have an interest in
and to the property which is subject of this
action, referenced for convenience by the
fictitious designations of DOES 1
THROUGH 10,

    Defendants.

_____

Boise, February 2017 Term

2017 Opinion No. 47

Filed: May 23, 2017

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the
State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge.

The judgment of the district court, as well as the award of attorney
fees and costs are vacated. This case is remanded for further proceedings
in accordance with this Opinion. Costs on appeal are awarded to ACHD.

1

Holland & Hart, LLP, Boise, and Jones Gledhill Fuhrman Gourley, P.A., Boise, attorneys for appellant. Mary V. York argued.

Davison, Copple, Copple & Copple, Boise, attorneys for respondent. Heather Cunningham argued.

_____

JONES, Justice

## I. NATURE OF THE CASE

In a case arising out of Ada County, the Ada County Highway District ("ACHD") appeals a district court judgment awarding $148,390.21 plus prejudgment interest and attorney's fees to Brooke View, Inc. d/b/a The Senator ("Brooke View") as just compensation for a parcel of property that ACHD condemned and took possession of under the State's eminent domain powers. ACHD argues on appeal that the district court misconstrued the law when it allowed Brooke View to recover the cost to repair damage to a wall on Brooke View's property, which the jury found had been caused by the construction of improvements on the taken parcel.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Respondent, Brooke View, is an Idaho corporation that owns an undivided interest in certain property located at 421 South Curtis Road in Boise, Idaho (the "Property"). The Property, which is approximately 20 acres, is the site of a housing development for senior residents. The development sits behind a serpentine concrete block entrance wall (the "Wall"), which is covered in stucco on one side and an intricate pattern of decorative brick on the other.

In early 2012, ACHD embarked on Project No. 809028, also known as the Safe Routes to School project (the "Project"). The goal of the Project was to design and build sidewalks and walkways in order to provide students with safe walking routes to and from nearby schools. The improvements undertaken as part of the Project included not only the installation of sidewalks, but also the construction of a storm drainage system which included digging an "infiltration trench." The infiltration trench is five to six feet wide and eleven to twelve feet deep. It is located approximately six feet from the Wall.

On March 1, 2012, ACHD offered Brooke View $7,738.47 (which it later increased to $8,512.32) as just compensation for a 1,425 square foot section of the Property (the "Taken Property"), which was needed to complete the Project. Brooke View rejected the offer.

2

On April 30, 2012, Dianne Miller ("Miller"), the president and owner of Brooke View, contacted ACHD to express concern that the Project could cause damage to the Wall and the surrounding landscaping. After meeting with Miller, ACHD's project manager, engineer, and right-of-way specialist determined that the Project would not damage the portion of the Property not required to complete the Project (the "Remaining Property). It does not appear that ACHD ever investigated the possibility of damage to the Wall beyond this preliminary assessment.

On June 20, 2012, ACHD issued an order of condemnation with respect to the Taken Property.[1] By that issuance, ACHD sought to exercise its power of eminent domain under Idaho Code section 7-701 to acquire a fee simple interest in the Taken Property as well as a temporary construction easement on an additional 2,706 square feet of the Remaining Property. While the Wall itself was not condemned, the temporary easement included a significant portion of the Wall. On July 11, 2012, ACHD filed a complaint with the Ada County district court seeking to effectuate its order of condemnation. On August 7, 2012, the parties stipulated to allow ACHD to take possession of the Taken Property. On August 23, 2012, the district court entered an Order for Possession of Real Property effectuating the stipulation.

In October, 2012, ACHD began construction. On November 1, 2012, a resident on the Remaining Property discovered a crack in the Wall and notified Miller. Thereafter, Miller located multiple cracks in the Wall. Following the discovery of these damages, the focus of the litigation shifted from the value of the Taken Property to the cause of the damage to the Wall and whether the cost of repairing that damage could legally be recovered as part of just compensation.

On August 8, 2013, ACHD filed a motion for summary judgment in which it asserted that physical damage occurring during construction is not part of just compensation, and instead must be pursued in tort. The motion was denied.

On October 3, 2013, ACHD filed another motion for summary judgment as well as a motion for reconsideration of its prior motion for summary judgment. It filed a single memorandum in support of both motions, in which it again argued, *inter alia*, that any theory that Brooke View had for damage to the Wall caused during construction was compensable only

---

[1] At trial, the parties stipulated that ACHD had actually taken an additional 131.2 square feet of the Property. The final size of the Taken Property was determined to be 1,566.07 square feet.

3

in tort. On December 2, 2013, the district court denied both motions. It stated in its denial of ACHD's third motion for summary judgment that:

> [T]he Defendant, Brooke View, Inc.'s assertion that ACHD's "Safe Route to School" project of Curtis Road . . . caused physical damage to the entrance way walls on the remaining Brooke View property, via underground water trespass, vibration, or taking of lateral support, are encompassed within and a part of the ACHD eminent domain claim and no counterclaim or affirmative defense must be pled by the defendant, Brooke View, Inc. to assert the same.

The district court further held that:

> [T]he Defendant, Brooke View, Inc. is not required to prove the specific mechanism of how the Brooke View entrance way walls were allegedly physically damaged, but rather simply that construction of the improvement in the manner proposed by the Plaintiff pursuant to the Project was the cause of the alleged physical damage; and … No evidence of negligent or defective construction of the Project, or deviation from how the Project was proposed to be constructed, will be permitted at the trial absent a counterclaim by Brooke View, Inc. as to the same.

On December 15, 2014, ACHD filed another motion for partial summary judgment or, in the alternative, motion *in limine*. In its memorandum in support, ACHD argued, *inter alia*, that "Brooke View cannot meet its burden of proof as to proximate cause." ACHD further argued that it had immunity for any damages caused to Brooke View under the Tort Claims Act (Idaho Code section 6-904(7)). On February 26, 2015, the district court denied ACHD's motion. In its order, the district court reasoned that "[t]his is a constitutional claim, not a tort claim, and tort principles do not apply. The defendant has to prove damages were caused, but they do not have to prove proximate cause of the mechanism of damage." The district court further held that because any damages caused during construction implicated a constitutional claim rather than a tort claim, Idaho Code section 6-904 (the "Tort Claims Act") was inapplicable.

On April 6, 2015, the parties went to trial. Over the course of the trial the district court repeatedly reemphasized that: (1) damages caused during construction were part of just compensation; and (2) there was no tort claim at issue, and accordingly, tort issues were not relevant. Despite multiple admonitions from the district court, ACHD maintained its position that damages caused during construction were not compensable during a condemnation action. ACHD did not submit any evidence in support of any valuation; instead conceding that Brooke View was entitled to just compensation in the amount of $8,512.32.

4

On April 23, 2015, the jury unanimously returned a verdict in the amount of $146,291.68. This number was reached by adding the fair market value of the Taken Property ($3,915.18), the fair market value of the temporary easement ($676.50), the value of improvements taken ($700.00), and the value of the cost to cure the damage caused to the Wall ($141,000.00).

On June 12, 2015, the district court entered a judgment on the verdict in the amount of $148,390.21 and prejudgment interest of $48,792.66. On August 27, 2015, the district court granted Brooke View's motion for attorney's fees and costs, awarding $744,243.56 in attorney's fees, $44,051.46 in non-discretionary costs, and $365,703.63 in discretionary costs.

### III. ISSUES ON APPEAL

1.      Did the district court err when it included recovery for physical damages to the Wall as part of just compensation for the Taken Property?

2.      Did the district court err in its jury instructions?

3.      Did the district court err in admitting testimony and other evidence of events, activities, and damages that occurred during the construction of improvements on the Taken Property?

4.      Did the district court err in awarding Brooke View attorney's fees, costs as a matter of right, and discretionary costs?

### IV. STANDARD OF REVIEW

> We exercise free review over statutory interpretation because it is a question of law. *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013). Our objective when interpreting a statute is "to derive the intent of the legislative body that adopted the act." *Id.* (quoting *State v. Schulz*, 151 Idaho 863, 866, 264 P.3d 970, 973 (2011)). Statutory interpretation begins with the statute's plain language. *Dunlap*, 155 Idaho at 361, 313 P.3d at 17. This Court considers the statute as a whole, and gives words their plain, usual, and ordinary meanings. When the statute's language is unambiguous, the legislature's clearly expressed intent must be given effect, and we do not need to go beyond the statute's plain language to consider other rules of statutory construction. *Id.* at 361–62, 313 P.3d at 17–18.

*State v. Leary*, 160 Idaho 349, 352, 372 P.3d 404, 407 (2016) (quoting *State v. Owens*, 158 Idaho 1, 3, 343 P.3d 30, 32 (2015)).

> If the words of the statute are subject to more than one meaning, it is ambiguous and this Court must construe the statute "to mean what the legislature intended it to mean. To determine that intent, [this Court] examine[s] not only the literal words of the statute, but also the reasonableness of proposed constructions, the public policy behind the statute, and its legislative history."

5

*Doe v. Boy Scouts of America*, 148 Idaho 427, 430, 224 P.3d 494, 497 (2009) (quoting *State v. Doe*, 147 Idaho 326, 328, 208 P.3d 730, 732 (2009)).

**V. ANALYSIS**

**A.      The district court erred in its interpretation of just compensation under Idaho Code section 7-711(2)(a).[2]**

Prior to the trial in this case, the district court held that Brooke View's claims of damage caused to the Wall during construction on the Taken Property were "encompassed within and a part of the ACHD eminent domain claim and no counterclaim or affirmative defense must be pled by the defendant, Brooke View, Inc. to assert the same." We hold that this conclusion was error. Damages accruing during construction are not properly part of just compensation and must be pursued separately in tort. We further hold that any decisions by the district court in reliance on its initial error were themselves error, including with respect to the admission of evidence, jury instructions, and award of attorney's fees and costs.

Article I, Section 14 of the Idaho Constitution imbues the State with the power of eminent domain. It provides as follows:

> RIGHT OF EMINENT DOMAIN. The necessary use of lands for the construction of reservoirs or storage basins, for the purpose of irrigation, or for rights of way for the construction of canals, ditches, flumes or pipes, to convey water to the place of use for any useful, beneficial or necessary purpose, or for drainage; or for the drainage of mines, or the working thereof, by means of roads, railroads, tramways, cuts, tunnels, shafts, hoisting works, dumps, or other necessary means to their complete development, or any other use necessary to the complete development of the material resources of the state, or the preservation of the health of its inhabitants, is hereby declared to be a public use, and subject to the regulation and control of the state.

---

[2] As an initial matter, it is proper for this Court to consider ACHD's arguments with respect to the meaning of the word "construction" in Idaho Code section 7-711 in light of Idaho Code sections 7-712 and 6-904(7). Brooke View asserts that these arguments are new on appeal and therefore should not be considered, citing *Crowley v. Critchfield*, 145 Idaho 509, 512, 181 P.3d 435, 438 (2007). Brooke View's position is without merit. *Crowley* stands for the proposition that *substantive issues* cannot be raised for the first time on appeal. The Appellant in *Crowley* attempted on appeal to challenge a verdict as inconsistent without having made such a challenge at the time the verdict was entered. *Id.* The issue of whether the verdict was inconsistent was an entirely new issue on appeal.

Here, early in the proceedings before the district court ACHD adopted the position that damages caused during construction were not recoverable as part of just compensation. ACHD argued this position repeatedly, despite being admonished numerous times by the district court to stop doing so. There is no question that ACHD clearly raised the relevant issue before the district court. ACHD's specific arguments in support of its position may have evolved since the trial, but the issues on appeal and ACHD's position with respect to them remain the same.

> Private property may be taken for public use, but not until a *just compensation*, to be ascertained in the manner prescribed by law, shall be paid therefor.

Idaho Const. art. I, § 14 (emphasis added).

The calculation of the "just compensation" required for an exercise of eminent domain under Section 14 of the Idaho Constitution is governed by Idaho Code section 7-711 *et seq.* Idaho Code section 7-711 provides in relevant part as follows:

> The court, jury or referee must hear such legal testimony as may be offered by any of the *parties* to the proceedings, and thereupon must ascertain and assess:
>
> 1.   The value of the property sought to be condemned, and all improvements thereon pertaining to the realty, and of each and every separate estate or interest therein . . .
>
> 2.   If the property sought to be condemned constitutes only a part of a larger parcel: (a) the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and *the construction of the improvement in the manner proposed by the plaintiff . . . .*

I.C. § 7-711 (emphasis added). This language is nearly identical to the language used in An Act to Establish a Code of Civil Procedure for Idaho Territory, § 861, 1881 Idaho Sess. Laws, 1, 194, which was the precursor to Idaho Code section 7-711.[3]

_____

[3] Section 861 provided as follows:

> The Court, jury, or referee must hear such legal testimony as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess:
>
> 1.   The value of the property sought to be condemned, and all improvements thereon pertaining to the realty, and of each and every separate estate or interest therein; if it consists of different parcels, the value of each parcel and each estate or interest therein shall be separately assessed;
>
> 2.   If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff;
>
> 3.   Separately, how much the portion not sought to be condemned, and each estate or interest therein, will be benefited, if at all, by the construction of the improvement proposed by the plaintiff; and if the benefit shall be equal to the damages assessed, under Subdivision 2, the owner of the parcel shall be allowed no compensation except the value of the portion taken; but if the benefit shall be less than the damages so assessed, the former shall be deducted from the latter, and the remainder shall be the only damages allowed in addition to the value;

At the time the applicable wording was originally enacted, the word "manner" meant:

> 1. Form; method; way of performing or executing.
> Find thou the *manner* and the means prepare.
> . . . .
> 3. Sort; kind.
> Ye tithe mint and rue, and all *manner* of herbs. Luke 11:42.
> They shall say all *manner* of evil against you falsely—Matthew 5:11.
> In this application, *manner* has the sense of a plural word; all sorts or kinds.

Noah Webster (1828), http://webstersdictionary1828.com/Dictionary/construction. Thus, the meaning of the phrase could mean either the method of constructing the improvement or the kind of improvement to be constructed.[4] The phrase in context shows that the latter meaning is correct.

Section 861 provided a cause of action to recover damages to the portion of the property not to be condemned if that portion of the property was injuriously affected by the severance and the proposed construction. This section stated that the trier of fact must ascertain and assess "the damages which will accrue to the portion [of the larger parcel] not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff."

The cause of action for damages for injury to the remaining portion of the larger parcel accrued as of the date of the issuance of the summons, not on the date of some injury that was caused to the remaining property during the construction project. Section 862 of the legislation stated, "For the purpose of assessing . . . damages, the right thereto shall be deemed to have

---

4. If the property sought to be condemned be for a railroad, the cost of good and sufficient fences along the line of such railroad, and the cost of cattle guards where fences may cross the line of such railroad;

5. As far as practicable, compensation must be assessed for each source of damage separately.

[4] Brooke View argues that the word "construction" simultaneously means both the process of construction and the thing constructed. There appears to be no context in the English language in which this is actually true. Rather, the two definitions are mutually exclusive in use. A person cannot, using a single utterance of the word "construction," refer to both a completed edifice and the process of constructing said edifice. The word "construction" can be used twice in the same sentence, each time having a different meaning, but each individual use will mean one or the other. It is not surprising then, that despite claiming that the word "construction" is "not typically used to mean only one of two mutually different things" Brooke View does not provide a single example of the word used in context to convey both definitions simultaneously.

accrued at the date of the summons . . . ."[5] If the purpose of Section 861 was to provide a cause of action for an injury to the remaining property caused by something that occurred during the construction process, the legislature would not have provided that the cause of action accrued upon the issuance of the summons in the condemnation case. There are many occurrences during a construction project that could possibly injure the remaining property, depending upon the nature of the remaining property and other factors. When the summons was issued, one would not know whether the remaining property would be injured by something that may later occur during the construction process or the extent of such possible injury. If the legislature had intended that Section 861 provide a cause of action for injuries to the remaining property that were caused during the construction project, it would have provided that such cause of action accrued when such injury occurred, not when the summons was issued in the condemnation case. It would not have provided that a cause of action for such injury accrued before the injury even occurred.

In addition, Section 862, which is substantially similar to the current Idaho Code section 7-712, did not provide that the amount of damages recoverable was based upon an injury to the remaining property that was caused during the construction project. Rather, it provided that the actual value of the remaining property as of the date of the issuance of the summons was the basis for the damages recoverable. The statute stated, "For the purpose of assessing . . . damages, . . . its actual value, at that date [the issuance of the summons] shall be . . . the basis of damages to property not actually taken, but injuriously affected, in all cases where such damages are allowed . . . ." If the legislature had intended to provide a cause of action in the statute for injury to the remaining property during the construction process, the value of the remaining property on the date the summons was issued would not be the measure of damages. The actual value of the

---

[5] Section 862 provided:

> Sec. 862. For the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of the summons, and its actual value, at that date shall be the measure of compensation for all property to be actually taken, and the basis of damages to property not actually taken, but injuriously affected, in all cases where such damages are allowed, as provided in the last section. No improvements put upon the property, subsequent to the date of the service of summons, shall be included in the assessment of compensation or damages.

An Act to Establish a Code of Civil Procedure for Idaho Territory, § 861, 1881 Idaho Sess. Laws, 1, 194–95.

property would not necessarily have any correlation to any damage caused to it during the construction process.[6]

Finally, the damages recoverable under Section 861 were those allowable under Section 862. Section 862 stated, "For the purpose of assessing . . . damages, . . . its actual value, at that date shall be . . . the basis of damages to property not actually taken, but injuriously affected, in *all cases* where such damages are allowed, *as provided in the last section*." (Emphases added.) The last section was Section 861. The value of the remaining property at the time the summons was issued is the basis of damages *in all cases* where damages are allowed as provided in Section 861. Therefore, the measure of damages set forth in Section 862 were the damages allowable under Section 861. Section 861 did not provide for the recovery of other damages.

This interpretation of the language in Section 861 as only allowing for damages to the value of remaining property resulting from the severance, and not accruing during the process of construction, is in accord with our prior decisions. In 1911, this Court issued its opinion in *Idaho-Western Ry. Co. v. Columbia Conference of Evangelical Lutheran Augustana Synod.*, 20 Idaho 568, 119 P. 60 (1911). In *Idaho-Western,* the State sought to acquire a 100 foot wide strip of land in Coeur d'Alene Idaho to be used for "railroad purposes." *Id.* at 573, 119 P. at 61. Prior to the eminent domain action, the strip of land was part of the campus of Coeur d'Alene College. *Id.* Offers of just compensation were rejected and the case proceeded to trial. *Id.* At trial, the president of the college, Dr. Jeperson, testified that the noise of locomotives and trains passing back and forth over the ground so near to the college would have a detrimental effect to the students' studies. *Id.* at 574, 119 P. at 61–62. Numerous other professors testified to the same

---

[6] Furthermore, as of the date of the summons, the property owner will be informed of the planned improvement and its planned uses. Accordingly, the owner will be able to calculate damage to the value of his or her property on that date in consideration of the future improvement and its planned uses.

By contrast, damage occurring during construction does not affect the value of the remaining property until it actually occurs and thus cannot be calculated as of the date of the summons. The case here is a good example. Although Miller expressed concerns to ACHD, prior to construction, that the Wall could be damaged during the construction process, Miller's own experts testified that the planned improvements could have been constructed without damaging the Wall. Indeed, Miller presented testimony that there were numerous steps that could have been taken to prevent or mitigate the damage. It was not until well after the damage had actually occurred, and after substantial expert analysis, that it became evident that the damage to the Wall was "most likely" caused by vibrations during the compaction process. It follows that any damage to the value of the remaining section of the Property occurring during construction cannot be said to have occurred or accrued at the time of the summons, and could not have been calculated at that time.

effect. *Id.* at 575, 119 P. at 62. The jury returned a verdict of $5,000 for the value of the property to be taken and $3,900 as the amount of damage that would be sustained to the remainder of the property by reason of the severance. *Id.* at 574, 119 P. at 61–62. The State appealed, arguing that harm to the college due to noise was not a proper part of severance damages and that testimony as to the effects of such noise was not relevant. *Id.* In addressing this argument, the Court analyzed Section 5220 of the Revised Codes, which used language identical to the pertinent language in Idaho Code section 7-711. *Id.* at 581, 119 P. at 64. The Court held that:

> The noise usually incident to the operation of railway trains should not be considered as an element of damage in the ordinary case, for the reason that such a purpose is lawful and condemnation is allowed therefor, and the noise of operating a railroad goes along with the use. Where, however, the property is already devoted to such a special and peculiar use that the taking of a part brings the use and incidental noise so near as to render the noise a private nuisance to the owner of the remaining property, except for the condemnation, and greatly depreciates its value for such special use or renders it valueless, this element ought to be considered in ascertaining the damage that will be suffered to the remaining property after the severance.

*Id.* at 585–86, 119 P. at 66. Thus, *Idaho-Western* definitively established that damage to the value of remaining property resulting from the planned improvement and the planned uses thereof are properly part of just compensation. It follows that the word "construction" in Idaho Code section 7-711 must refer to the completed improvement.

There is no Idaho case law supporting Brooke View's assertion that "construction," as used in Idaho Code section 7-711, should be interpreted as the process of construction. The only Idaho case addressing damages caused during construction held that the land owner's claims for damages caused during construction had to be pursued in tort. *See Campbell*, 34 Idaho, 601, 604–05, 202 P. 1065, 1066 (1921). In *Campbell*, the Oregon-Washington Railroad & Navigation Company condemned a right of way across a property owner's land in order to construct a railroad. *Id.* The property owner argued that he should be compensated for the fact that construction of the railroad "resulted in turning the water of [the taken property] through their land and carrying certain poisonous matter into a fresh water stream on their remaining land." *Id.* Citing C.S. 5415, which is identical to Idaho Code section 7-711, this Court held that the alleged damages were not part of just compensation. It reasoned as follows:

> The damages thus complained of were occasioned by construction of the railroad on land outside of the tract owned by appellants and did not in any way

11

result from the taking of appellant's land. Besides, they accrued long after the date of the issuance of summons and were not damages which at that date could have been anticipated as a result of the construction of respondent's railroad, and therefore were not deemed by law to have accrued at that date . . . If respondent was liable for such damages, they could be recovered only in a separate action.

*Id.*

Brooke View argues that this case can be distinguished from *Campbell* because in that case "1) the damages occurred outside the area of the take; 2) the damages were along the lines of a tort; obviously a condemnor would not propose construction that caused poison to enter a freshwater stream, and 3) it was not foreseeable from the project proposed." The problem with Brooke View's argument is that each of the identified factors is also present here; thus, Brooke View fails to distinguish *Campbell* from the case at hand. First, in this case, as in *Campbell*, the damages occurred outside of the take. While part of the Wall was inside of the temporary easement, the damage was not limited to that part of the Wall. Most, if not all, of the damage to the Wall occurred to portions that were on the Remaining Property, which was not part of the temporary easement. Second, as in *Campbell*, the damages at issue in this case are along the lines of those recovered in tort. Although we take no position as to whether Brooke View could successfully pursue a tort claim against ACHD, there is nothing fundamentally different about the poisonous matter stemming from the construction in *Campbell* and the vibrations stemming from the construction here. Further, just as a non-negligent condemnor in *Campbell* would not propose construction causing poison to enter a freshwater stream, a non-negligent condemnor in this case would not propose construction that would cause damage to a wall on the neighboring property. Finally, it is far from clear that the damages here were any more foreseeable than those in *Campbell*. Not even Brooke View's experts, with the benefit of hindsight, had a settled theory as to what caused the damage to the Wall.

Between *Idaho-Western* and *Campbell*, this Court's precedent leads us to conclude that Idaho Code section 7-711 includes damage to the value of the Remaining Property as a result of planned improvements to the Taken Property and their planned uses, but does not include physical damages to the Remaining Property occurring during the construction process.

This conclusion is further supported by precedent set by this Court providing for attorney's fees in eminent domain cases. In *Ada County Highway Dist. v. Acarrequi*, this Court

determined that attorney's fees in eminent domain cases should be granted in consideration of the following:

> [G]iven the entire theory of eminent domain, *i.e.,* that a jury will determine the just compensation to be awarded the condemnee, we must, it seems, assume that a jury verdict at least approximates the fair market value of the property taken and the damages which will result to the remainder. We are convinced that such is at least a more reliable indicator than the wide and wild variations in value which will be testified to in any given case by the expert witnesses brought forward by each party. As a point of beginning, we postulate that a jury in a condemnation action, attempting to choose among highly divergent evidence as to value, can only be expected to arrive at the "real" just compensation to which a condemnee is entitled within a margin of error of plus or minus ten per cent. Hence, we would deem that in considering the award of attorneys' fees to a condemnee, a condemnor should have reasonably made a timely offer of settlement of at least 90 per cent of the ultimate jury verdict. We also deem that an offer would not be timely if made on the courthouse steps an hour prior to trial. An offer should be made within a reasonable period after the institution of the action, to relieve the condemnee not only of the expense but of the time, inconvenience and apprehension involved in such litigation, and also to eliminate the cloud which may hang over the condemnee's title to the property.

105 Idaho 873, 878, 673 P.2d 1067, 1072 (1983). In short, this Court has pinned attorney's fees to whether or not the condemnor makes a settlement offer well before the time of trial which is within 90% of the eventual just compensation determination arrived at by the jury. This makes sense, so long as just compensation is limited to the value of the taken property, and the damage to the value of the remaining property, which can be calculated as of the time of the taking. However, this system of attorney's fees breaks down if damages during construction are included in just compensation. If that were the case, the condemnor would need to be able to foresee construction damages before the trial and tailor offers of settlement to those damages. Requiring a condemnor to predict construction damages is simply untenable prior to construction. This is especially true considering that there is no rule that the construction of an improvement must occur immediately after a taking. A situation could easily arise in which damages during construction occur years after the taking. This Court would not require condemnors to wait years in order to determine whether attorney's fees are owed. It would be entirely inequitable to the condemnor to expect it to be able to predict such unintended damages at the time of the taking, and then factor them into a settlement offer. Accordingly, the system of attorney's fees that this Court has set into precedent also supports our conclusion today that damages occurring during construction are not part of just compensation.

13

Brooke View next asserts that if just compensation does not include the damage to the Wall, it would be inequitably left without legal recompense because it would be unable to prevail under a tort theory. This Court takes no position as to whether Brooke View might be able to recover in a tort action. To make such a determination would be improper, especially considering that the district court specifically forbade the parties from presenting evidence that would be relevant in a negligence case. However, whether Brooke View could prevail under a tort theory does not dictate whether limiting Brooke View to tort theories is equitable or inequitable. To the contrary, our interpretation of Idaho Code section 7-711 leaves Brooke View in exactly the same position as any other party whose property is damaged during a road improvement project.

Imagine two neighbors, each with identical walls on their property. ACHD embarks on an improvement project. ACHD must take a small portion of neighbor A's property, but none of neighbor B's. During construction, both neighbors' walls are damaged in the exact same way. This Court's interpretation of section 7-711 (in which damages accruing during construction is not part of just compensation) leaves the two neighbors in exactly the same position. Both can bring tort actions against the State for the damage to their walls. In certain cases ACHD may be protected from those actions under the Tort Claim Act or under other tort principles. In such cases, the two neighbors are affected in the same way. This result is equitable under the law.

Conversely, under Brooke View's suggested interpretation of section 7-711, neighbor B (who had no property taken) must bring an action in tort and contend with all available tort defenses, while neighbor A is able to recoup any damage as part of just compensation and avoid any defenses that would be available in tort. The fact that neighbor A had a small part of property taken should not separate her from neighbor B when it comes to bringing claims for the same damage caused in the same way. To allow such a discrepancy would not promote equity, it would simply be giving neighbor A a workaround to Idaho's tort law.

Finally, if this Court were to adopt the district court's interpretation of Idaho Code section 7-711(2)(a) it would not only result in the nullification of tort principles in the eminent domain context but it would severely impede the State's ability to contract. If the State is automatically held liable for all damage caused during construction, regardless of negligence or any tort defenses that might be available, it stands to reason that the indemnification agreements that it enters into with contractors and tradespeople would become unenforceable. Any damage caused by contractor negligence, no matter how egregious, would be attributed to the state

14

without any finding of negligence. Such a rule would force ACHD into the unjust position of being legally responsible for consequences of third party actions over which it had no control and for which it would otherwise have been indemnified. We find that there is no justification to abandon the tort and contract frameworks simply because the construction of an improvement occurs as part of a project in eminent domain.

In sum, we interpret Idaho Code section 7-711(2)(a) as providing that just compensation includes any decrease in the value of remaining property based on the future existence of any planned improvements and the planned uses of those improvements. Conversely, just compensation does not include any physical damages that accrue to the remaining property during the construction of any improvements. Claims for such damages must be brought in tort.

**B.      The instructions submitted to the jury were error that prejudiced ACHD.**

> This Court reviews jury instructions to determine whether the instructions, as a whole, fairly and adequately present the issues and state the law. *Newberry v. Martens*, 142 Idaho 284, 287, 127 P.3d 187, 190 (2005). A requested jury instruction must be given when it is supported by any reasonable view of the evidence. *Craig Johnson Constr., L.L.C. v. Floyd Town Architects, P.A.*, 142 Idaho 797, 800, 134 P.3d 648, 651 (2006) (citing *Bailey v. Sanford*, 139 Idaho 744, 750, 86 P.3d 458, 464 (2004)). An instruction is not to be given if it is an erroneous statement of the law, not supported by the facts, or adequately covered by the other instructions. *Id.* Reversible error occurs when an instruction misleads the jury or prejudices a party. *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 51, 995 P.2d 816, 821 (2000) (citing *Lawton v. City of Pocatello*, 126 Idaho 454, 462, 886 P.2d 330, 338 (1994)).

*Vanderford Co., Inc. v. Knudson*, 144 Idaho 547, 555, 165 P.3d 261, 269 (2007)

Jury instruction 20 was error because it contained the district court's erroneous interpretation of the law:

> In this case, Brooke View claims the taking and the construction of the ACHD improvement project in the manner proposed by ACHD caused its remaining land to decrease in market value. Brooke View has the burden of proving construction of the ACHD improvement project in the manner proposed by ACHD caused damage to its property or improvement on that property. Brooke View does not have to prove the mechanism for how such damage, if any, occurred.
>
> If you find Brooke View has met its burden of proof, Brooke View is entitled to the lesser of the decrease in the market value of the remaining property or the cost to cure any proven damages, but not both. Cost to cure is the amount required to restore the property to the condition it was in before it was damaged.

15

The language used in this jury instruction invites the jury to include physical damage that occurred to the Property during the construction process in the calculation of just compensation. This is evident from the phrase "caused damage to its property or improvement on that property." As explained above, physical damage caused during construction is not properly part of just compensation, but rather must be pursued in tort. Accordingly, instruction 20 was error.

Jury instruction 27 was also error:

> For purposes of your decision you are to assume ACHD is responsible for all construction work performed as part of the Curtis Road Project.

The party responsible for the "construction work" is not relevant to the jury's calculation of just compensation damages. Identifying this as an issue would lead the jury to believe that damages caused during construction are part of just compensation.

These instructions, to the extent that they led the jury to consider physical damages occurring during the construction process, prejudiced ACHD. The lion's share of the final judgment amount awarded in this case was for the cost to cure damages occurring during construction. The inclusion of such damages constitutes prejudice.

## C. The district court erred in admitting testimony and other evidence of events, activities, and damages, that occurred during the construction of improvements on the Property

To the extent that the district court admitted testimony and other evidence of events, activities and damages that allegedly occurred during the construction of improvements, the district court committed error. As explained herein, physical damage caused to property not taken, during construction does not factor into just compensation. The admission of evidence relating to such damages that is not otherwise relevant to the calculation of just compensation is error.

## D. The district court's award of attorney's fees to Brooke View is vacated.

Because Brooke View is no longer the prevailing party below, the district court's award of attorney's fees and costs must be vacated.

### VI. CONCLUSION

We hereby vacate the district court judgment and the award of attorney's fees and costs. We remand for further proceedings in accordance with this opinion. Costs on appeal to ACHD.

Chief Justice BURDICK and Justices EISMANN, HORTON and BRODY **CONCUR.**