## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 46605

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | **Boise, April 2019 Term** |
| | ) | |
| v. | ) | |
| | ) | **Opinion Filed: June 13, 2019** |
| JUSTIN K. HOSKINS, | ) | |
| | ) | **Karel A. Lehrman, Clerk** |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Robert Naftz, District Judge.

District court decision denying motion to suppress, <u>reversed</u>, judgment of conviction <u>vacated,</u> and case <u>remanded</u> for further proceedings consistent with this opinion.

Eric D. Frederickson, State Appellant Public Defender, Boise, for appellant. Kimberly A. Coster, Deputy State Appellate Public Defender, argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Kenneth K. Jorgensen, Deputy Attorney General, argued.

_____

BURDICK, Chief Justice.

Justin K. Hoskins appeals the Bannock County district court's denial of his motion to suppress. The State argued that Hoskins lacked standing to object to the search based on consent and the district court denied the motion on that basis. On appeal, all parties agree the district court's ruling on standing was erroneous. Nevertheless, the State argues that the district court's decision can be affirmed based on the plain-view doctrine. Hoskins objects and argues that the State forfeited this argument by failing to raise it below. Hoskins prevailed at the Court of Appeals and this Court granted the State's timely petition for review.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

In September 2016, Idaho State Trooper Spencer Knudsen observed a Pontiac Grand Am driving with a cracked windshield and pulled it over. He asked the driver for the vehicle's registration and insurance as well as identification for the vehicle's three occupants. The

occupants produced various forms of identification, but were unable to provide registration or insurance for the vehicle. The identification revealed that Jovette Archuleta was the driver of the vehicle, Amber Alvarez was seated in the passenger's seat, and Hoskins was seated alone in the back seat.

Trooper Knudsen relayed information on the vehicle and its occupants to dispatch for a records check. Before long, dispatch informed Trooper Knudsen that the vehicle's license plates actually belonged to a Chevrolet Malibu registered to Archuleta. Dispatch also notified Trooper Knudsen that all of the vehicles' occupants had prior drug convictions. Returning to the Pontiac, Trooper Knudsen asked Archuleta to step out of the car to speak with him. Once she had, he questioned her about whether the car contained anything illegal. After she stated that she didn't believe so, Trooper Knudsen asked for permission to search the car. Archuleta explained that Alvarez actually owned the car, not she. Knudsen then requested that Alvarez exit the vehicle to speak with him. Knudsen also asked Alvarez whether there were any drugs in the vehicle, and, eventually, for her consent to search the vehicle. Reluctant, Alvarez explained that she had just bought the car and was worried that if Trooper Knudsen found anything illegal in the car, it might get the seller in trouble. Trooper Knudsen assured Alvarez that the seller would not get in trouble, but made clear that if she did not consent, he would get consent from Archuleta. Soon after, Alvarez gave her permission to search the vehicle.

Before searching the vehicle, Trooper Knudsen directed Hoskins to get out of the backseat. The district court described the ensuing moments as follows:

> As Hoskins began to exit the car, Trooper Knudsen instructed him to leave his personal items on the backseat. During the subsequent search of the car and questioning of [Hoskins], Trooper Knudsen found marijuana in a cigarette package left in the car by [Hoskins]. Upon closer examination, Trooper Knudsen discovered a baggie containing methamphetamine.

Hoskins was arrested and charged with possession of methamphetamine with a sentencing enhancement based on a prior drug conviction.

Hoskins promptly filed a motion to suppress the evidence taken from the traffic stop. He argued that the traffic stop "evolved into an illegal detention and seizure of the Defendant's person" and cited *State v. Newsom*, 132 Idaho 698, 979 P.2d 698 (1998), for the proposition that his Fourth Amendment right to be free from unreasonable searches and seizures was violated after he "was instructed to leave his wallet and personal items inside the vehicle in which he was riding as a passenger."

2

At the evidentiary hearing, the State called Trooper Knudsen to testify about stopping the vehicle, calling for additional back up, and asking Hoskins to leave his personal belongings in the car. He testified that he asked Hoskins to leave his items in his car because his training and experience taught him that people sometimes keep drugs and weapons in such containers. The State also inquired about how he received permission to search the vehicle and how he questioned Hoskins about whether the vehicle contained anything illicit. Trooper Knudsen testified about how Hoskins eventually told him that there might be marijuana in a cigarette package and that Hoskins later claimed ownership over the package. Based on his testimony, Trooper Knudsen removed the marijuana so that he could return the cigarettes to Hoskins but, upon removing the marijuana, he found a second baggie containing methamphetamine.

Hoskins's lawyer cross-examined Trooper Knudsen about the same topics, but focused on the duration of the stop and Trooper Knudsen's process of obtaining consent from Alvarez. Before Trooper Knudsen stepped down, the Court asked him about why he called for back-up and who gave the consent to search the vehicle. For his part, Hoskins offered into evidence video footage of the stop taken from the dash-board camera in Trooper Knudsen's patrol vehicle. The evidence was admitted upon stipulation by the State. The court then directed the parties to submit briefs on the matter addressing two issues:

> THE COURT: Okay. That's what I want you to focus then on. So those are the two issues. Coerced consent, and then the idea that things can't be required to be left in the vehicle with regard to items [directed to be left in the car by a police officer].

The State requested that it be allowed to file its brief after Hoskins so that the State would be able to address Hoskins's arguments. The court acquiesced.

In his brief, Hoskins argued that: (1) he had standing to contest the search of his personal items; (2) the traffic stop was unlawfully prolonged and any consent was obtained by coercion; and (3) the search of his personal items was illegal under *Newsom*.

In response, the State contended that (1) Hoskins could challenge the stop of the vehicle but not the search of the vehicle because he had no ownership interest in it; (2) the traffic stop was not unlawfully prolonged; and (3) the search of Hoskins's personal effects was not illegal because it was within the scope of validly obtained consent.

The district court denied Hoskins's motion to suppress. The court ruled that Hoskins did not have standing to contest the search of the vehicle because the vehicle was searched pursuant

to validly obtained consent. The court ruled that Alvarez's consent was not the result of coercion and that Trooper Knudsen was justified in initially stopping the vehicle and then extending the stop. Shortly thereafter, Hoskins pleaded guilty to possession of a controlled substance and reserved the right to appeal the denial of his motion to suppress. The Court imposed a unified sentence of three years, with one year fixed, but suspended the sentence and placed Hoskins on probation.

Hoskins timely appealed and the case was assigned to the Court of Appeals which reversed the district court's denial of the motion to suppress and vacated the judgment of conviction. This Court granted the State's timely petition for review.

## II.    ISSUE ON APPEAL

Does the right-result, wrong-theory rule require this Court to hear an unpreserved argument on appeal from the denial of a motion to suppress?

## III.    STANDARD OF REVIEW

**Petition for Review:**

"When reviewing a case on petition for review from the Court of Appeals this Court gives due consideration to the decision reached by the Court of Appeals, but directly reviews the decision of the trial court." *State v. Daly*, 161 Idaho 925, 927, 393 P.3d 585, 587 (2017) (quoting *State v. Schmierer*, 159 Idaho 768, 770, 367 P.3d 163, 165 (2016)).

**Suppression Hearing:**

When reviewing a trial court's grant or denial of a motion to suppress, this Court applies a bifurcated standard of review where the Court "defers to the trial court's factual findings unless they are clearly erroneous," but "freely reviews the determination as to whether constitutional requirements have been satisfied in light of the facts found." *State v. Hansen*, 151 Idaho 342, 345, 256 P.3d 750, 753 (2011) (quoting *State v. Smith*, 144 Idaho 482, 485, 163 P.3d 1194, 1197 (2007)).

## IV.    ANALYSIS

**A. The district court's denial of Hoskins's motion to suppress will be reversed because the State failed to carry its burden to show that the search of Hoskins's personal items fell into a well-defined exception to the warrant requirement.**

The Fourth Amendment to the U.S. Constitution prohibits unreasonable searches and seizures. Under the Fourth Amendment, a search conducted without a warrant is "presumptively unreasonable." *Hansen*, 151 Idaho at 346, 256 P.3d at 754 (citations omitted). To show a

4

violation of the Fourth Amendment's prohibition on unreasonable searches, the defendant "must come forward with evidence sufficient to show there was a Fourth Amendment search, she has standing to challenge the search, and the search was illegal." *State v. Holland*, 135 Idaho 159, 162, 15 P.3d 1167, 1170 (2000) (citing *State v. Bottelson*, 102 Idaho 90, 92, 625 P.2d 1093, 1095 (1981)). This Court has used the term "standing" in the context of suppression hearings as "shorthand for the question [of] whether the moving party had a legitimate expectation of privacy in the area that was searched." *State v. Mann*, 162 Idaho 36, 44 n. 1, 394 P.3d 79, 87 n. 1 (2017). "When the defendant challenges the legality of a search based upon the absence of a search warrant, the burden then shifts to the State to prove the legality of the search." *Holland*, 135 Idaho at 162, 15 P.3d at 1170 (citation omitted). Once the burden has shifted, the State must "demonstrate that the search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances." *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995).

On appeal, the State argues that the plain-view doctrine supplies the "well-recognized exception to the warrant requirement." *Id.* To this end, the State asserts that there was no unreasonable search and seizure under the Fourth Amendment because Hoskins surrendered his reasonable expectation of privacy in the cigarette package when he informed Trooper Knudsen that it contained marijuana. Therefore, the State argues, Trooper Knudsen could lawfully seize the marijuana as contraband. Once he did, the State continues, the methamphetamine was exposed to plain view and Trooper Knudsen lawfully seized that as well. Thus, the State contends, the lower court correctly denied Hoskins's motion and this Court can affirm on that basis. However, the State argues that if this Court declines to affirm on that basis, then Hoskins's "unrelated admission" to the marijuana causes the search to fall under an exception to the exclusionary rule making suppression of the methamphetamine inappropriate. So the case should be remanded for the district court to determine whether an exception to the exclusionary rule applies.

We do not reach the merits of the State's plain-view argument because the State concedes that it failed to advance this argument below. "Issues not raised below will not be considered by this [C]ourt on appeal, and the parties will be held to the theory upon which the case was presented to the lower court." *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017) (citations omitted). In the record below, the State attempted to carry its burden by arguing

that the search fell within the "well-recognized exception" of consent. But now the State concedes that this argument (and, by extension, the district court's decision) is incorrect. In effect, the State admits that the arguments and evidence presented at the suppression hearing were insufficient to "demonstrate that the search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances" *Weaver*, 127 Idaho at 290, 900 P.2d at 198. Because appellate review is limited to the theory presented below, and because the State concedes the only theory it presented below is incorrect, reason suggests that the State's concession should resolve this appeal.

However, the State argues that this case presents an exception to the general limitation on appellate review. The State urges this Court to "affirm the district court's ultimately correct ruling by applying the correct legal standards." The State contends the lower court reached the "right result" (denying the motion to suppress) based on the plain-view theory it now advances (a "well-recognized exception to the warrant requirement"). For the State, its plain-view theory is the "correct legal standard" upon which this Court may affirm the district court. In short, the State relies on what is sometimes dubbed the "right-result, wrong-theory rule."

The State's invocation of the right-result, wrong-theory rule is inapt under these circumstances. After a careful review of the right-result, wrong-theory rule and a survey of our recent precedent on issue preservation, we decline to extend the right-result, wrong-theory rule to the State's unpreserved argument in this case.

    1.   Issue preservation and the right-result, wrong-theory rule.

This Court has made clear that a central rule of appellate review is that "[t]his Court will not consider issues raised for the first time on appeal." *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017) (citing *Mickelsen Const., Inc. v. Horrocks*, 154 Idaho 396, 405, 299 P.3d 203, 212 (2013)). To properly preserve an issue for appellate review, "both the issue and the party's position on the issue must be raised before the trial court. . . ." *State v. Gonzalez*, 164 Idaho ___, ___, 439 P.3d 1267, 1271 (2019). But so long as this requirement is met, the specific legal authorities used to support the position may evolve. *Id.*

While this is the general posture of appellate review, the State points out that there are also special doctrines of appellate review which act as limitations on reversal—such as the harmless-error and invited-error doctrines. Another such limitation occurs when the appellate court supports a lower court's judgment on alternate grounds. As previously noted, this scenario

6

has often been referred to as the "right-result, wrong-theory rule." *Garcia-Rodriguez*, 162 Idaho at 275, 396 P.3d at 704 (citing *Idaho Sch. for Equal Educ. Opportunity v. Evans*, 123 Idaho 573, 580, 850 P.2d 724, 731 (1993)). Though it has been stated in varying terms, the rule is generally phrased as: "Where an order of a lower court is correct, but based upon an erroneous theory, the order will be affirmed upon the correct theory." *Andre v. Morrow*, 106 Idaho 455, 459, 680 P.2d 1355, 1359 (1984) (citations omitted). Thus, the appellate court may uphold the decision on appeal by applying a correct theory to the same facts (or to undisputed facts in the record). The purpose of the rule is twofold. It promotes finality by upholding a decision on alternate bases that were adequately supported by the record even if incorrectly decided. It also promotes judicial economy by reducing both time and costs for the parties and the court system. By upholding the result on an alternate theory which would have been dispositive upon remand, the rule eliminates a duplicative proceeding.

Though it has been characterized as a "rule," this is a misnomer. Rather, the phrase "right-result, wrong-theory" provides an explanation for appellate review. It is most often invoked when there are two (or more) alternate bases presented to the lower court on which to resolve the case but only one of which is correct. This typically occurs in one of two ways. For example, in one scenario, the defense argues that it should prevail because (1) the statute of limitations expired or (2) the defendant is immune from suit. The lower court could then rule, in the alternative, that (1) the statute of limitations had passed and (2) the defendant is immune from suit. If the court incorrectly ruled on one of these issues (say, on the statute-of-limitations issue) then the plaintiff could properly appeal on that basis. However, once it determined that this issue was decided in error, the appellate court could identify the immunity doctrine as the correct basis for the decision and resolve the case on that ground.

The second scenario occurs when the lower court finds one theory to be dispositive and decides the case only on that theory—to the exclusion of other theories that are raised. Using the same facts as a hypothetical, this would occur if the lower court decided the case upon the statute-of-limitations issue only. In this circumstance, the appellate court may still uphold the lower court's decision on the alternate basis, but only if a few conditions are met. First, because the lower court did not reach the alternate issue, the appellate court must be satisfied that the parties had adequate opportunity to present evidence and arguments on the alternative issue. In other words, there must be sufficient facts in the appellate record on which to base a decision on

alternate grounds. Satisfaction of this condition will usually be dependent on the second condition: the theory on which the lower court decides the issue must not reroute the course of proceedings so that the alternate base does not have a chance to be litigated. That is, the affected party must have the reason and the opportunity to properly respond to the alternate grounds. *See Medling v. Seawell*, 35 Idaho 333, 337–338, 207 P. 137, 138 (1922) ("We are not bound by the theory announced by counsel and the court at the trial of the case unless the adoption of that theory caused the trial to take such a course that the sustaining of the judgment upon any other theory would work an injustice."). In the hypothetical, this might occur in a situation where the Court ruled early and decisively that the statute-of-limitations issue was dispositive. If one party did not have adequate opportunity or motive to present on immunity, then it would be improper for the appellate court to resolve the case on that issue. This understanding is in line with how the right-result, wrong-theory rule was originally applied.

As best can be determined, the first articulation of the right-result, wrong-theory rule was more than a century ago in *Gagnon v. St. Maries Light & Power Co.*, 26 Idaho 87, 91, 141 P. 88, 89 (1914). There, a painter under contract with a third party sued a power company for personal injuries after he was electrocuted while painting the company's building. *Id.* at 89, 141 P. at 89. The power company specially demurred[1] on two grounds: (1) the painter failed to state a cause of action, and (2) since the complaint alleged that the painter was an independent contractor, the third party, and not the power company, was liable for his injuries. *Id.* at 90, 141 P. at 90. The district court dismissed the painter's case based on his failure to state a cause of action given the language of the complaint. *Id.* On appeal, this Court determined the lower court's reading of the complaint was erroneous; however, rather than reverse and remand after determining error, the

---

[1]Since the term is no longer commonplace, and because the distinction becomes important, a demurrer is a "pleading stating that although the facts alleged in a complaint may be true, they are insufficient for the plaintiff to state a claim for relief and for the defendant to frame an answer." Black's Law Dictionary 526 (10th ed. 2014). In most jurisdictions, a demurrer "is now termed a motion to dismiss." *Id.* Demurrers could come in a couple of variations. For example, a special demurrer "states grounds for an objection and specifically identifies the nature of the defect, such as that the pleading violates the rules of pleading or practice. *Id.* By contrast, a general demurrer is:

> 1. An objection pointing out a substantive defect in an opponent's pleading, such as the insufficiency of the claim or the court's lack of subject-matter jurisdiction; an objection to a pleading for want of substance. — Also termed general demurrer.

> 2. An objection in which the excepting party does not specify the grounds of the objection.

*Id.* at 683 (10th ed. 2014) (cross-referenced under "general exception.").

*Gagnon* court went on to examine the second issue and sowed the seeds of the right-result, wrong-theory rule:

> A more important question is raised by the second ground of defendant's demurrer, and, although the lower court did not sustain the demurrer specifically on this ground, yet, as the same question must arise in proceeding further under the complaint, it seems advisable to dispose of it in this opinion. *It is also true that, if the demurrer was good on any ground stated, it would be the duty of this court to sustain the trial court, even though he sustained the demurrer on an erroneous ground.*

*Id.* (emphasis added). Thus, when first articulated, the rule contemplated that the alternate theory was raised in a demurrer even if the district court did not rule on it. Interestingly, the right-result, wrong-theory rule was first articulated in a case that involved reversing the trial court. More important, however, is that the language that first breathed life into the rule envisioned that the alternate argument or issue was raised below.

Returning to the case at hand, the State proposes that the right-result, wrong-theory rule can be invoked in situations where the alternative basis was not pressed before the trial court. As our recent case law suggests, we disagree.

> 2. This Court's recent precedent reaffirms the importance of issue preservation and rearticulates how to properly preserve issues.

While this Court has never specifically articulated whether the right-result, wrong-theory rule contains a preservation requirement, this Court has recently denied attempts to raise unpreserved arguments on appeal in *State v. Garcia-Rodriguez*, 162 Idaho 271, 396 P.3d 700 (2017), *State v. Cohagan*, 162 Idaho 717, 404 P.3d 659 (2017), and *State v. Fuller*, 163 Idaho 585, 416 P.3d 957 (2018). Prior to these cases, this Court also addressed issue preservation in *Ada County Highway District v. Brooke View, Inc.*, 162 Idaho 138, 395 P.3d 357 (2017). Most recently, this Court addressed what constitutes the same issue on appeal for preservation purposes in *State v. Gonzalez*, 164 Idaho at ___, 439 P.3d at 1271. These cases will be discussed in chronological order.

First, in *Ada County Highway District v. Brooke View, Inc.*, this Court explained that so long as a substantive issue is properly preserved, a party's appellate argument may evolve on appeal. 162 Idaho at 149 n. 2, 395 P.3d at 368 n. 2. The case involved a takings claim after the Highway District used eminent domain to install a drainage ditch and walkway on Brook View's property. *Id.* at 140, 395 P.3d at 359. Brook View first contested the amount paid in just compensation, but the litigation shifted its focus to separate damages when the Highway

9

District's construction destroyed portions of a decorative dividing wall. *Id.* at 140–41, 395 P.3d 357, 359–60. After repeatedly rejecting the Highway District's argument that the damage should not be considered as a part of the just-compensation calculus, the district court held that the damage was part of the takings claim. *Id.* at 141, 395 P.3d at 360. On appeal, the Highway District maintained its position, but supplemented its argument with citation to two relevant Idaho statutes dealing with the interpretation of the just-compensation statute. *Id.* at 149 n. 2, 395 P.3d at 368 n. 2. This Court rejected Brook View's argument that this additional authority represented an unpreserved issue on appeal. *Id.* We held that the Highway District could fine-tune its argument because the issue was properly raised below and its position on that issue had not changed. *Id.*

Next, this Court made clear in *Garcia-Rodriguez* that it would not reverse a trial court's decision based on an argument that was not presented below. 162 Idaho 271, 396 P.3d 700. There, a defendant moved to suppress methamphetamine found after a search incident to arrest. *Id.* at 274, 396 P.3d at 703. At the district court, the State argued that the defendant was arrested because the officer reasonably believed that he would not appear for court after being cited for driving without a license. *Id.* at 275, 396 P.3d at 704. On appeal, the State discarded this argument and instead argued that once the officer had probable cause to believe that the defendant was driving without a license, the subsequent arrest did not violate the Fourth Amendment. *Id.* at 274–75, 396 P.3d at 703–04. Noting that this argument was likely correct under relevant case law, this Court nonetheless held that it was not properly presented on appeal. *Id.* at 275, 396 P.3d at 704. Despite urging by the State, this Court declined to invoke the right-result, wrong-theory rule by noting that when this Court "has corrected lower court decisions based on legal error, [it] did so when the lower court reached the correct result albeit by way of erroneous legal reasoning." *Id.* at 275–76, 396 P.3d at 704–05. Since the State was asking for a reversal of the lower court based on issues not raised nor argued below, it was asking for a wrong-result, wrong-theory approach—an approach this Court declined to adopt. *Id.* at 276, 396 P.3d at 705.

Later on, in *State v. Cohagan*, this Court stated that it would not consider an alternate theory when that theory was conceded below. 162 Idaho 717, 404 P.3d 659. Again, the appeal involved a motion to suppress evidence taken from a search incident to arrest. *Id.* at 720, 404 P.3d at 662. There, a pair of police officers thought they saw an individual who had an

10

outstanding arrest warrant enter a convenience store. *Id.* at 719, 404 P.3d at 661. After asking for, receiving, and examining the defendant's ID card, one officer determined that the defendant was not who they believed he was and returned his ID. *Id.* Double-checking, the other officer returned to ask the defendant for his ID, and, even after realizing that the defendant wasn't who he first initially believed he was, the officer held onto the ID while he ran a warrant check. *Id.* When dispatch indicated that the defendant might have a warrant, the officer led the defendant out of the store while they waited for confirmation. *Id.* Dispatch confirmed the warrant and the officer made the arrest. *Id.*

To the trial court, the State conceded that the officer unlawfully stopped the defendant when he held onto the ID during the warrant check. *Id.* at 721, 404 P.3d at 663. On appeal, the State argued that, despite its prior concession, this Court must nevertheless decide whether that interaction was lawful before reaching the issue on appeal: attenuation. *Id.* This Court rejected the State's argument by stating that while it was true that an appellate court exercises free review over whether a seizure occurred, it is "equally true" that issues not raised below will not be considered on appeal and parties are held to the theory they presented to the district court. *Id.* (citing *Garcia–Rodriguez*, 162 Idaho at 275, 396 P.3d at 704). This Court stated that "[t]o allow the State to change positions on appeal and argue that the stop was not illegal would sharply cut against our longstanding and recently re-affirmed policy of requiring parties to present their arguments to the court below." *Id.* (citing *Garcia–Rodriguez*, 162 Idaho at 275, 396 P.3d at 704). Since the State's concession made it unnecessary to determine the lawfulness issue, this Court proceeded to the attenuation issue. *Id.*

Next, in *State v. Fuller*, 163 Idaho 585, 416 P.3d 957, the State sought to reverse a district court's grant of a defendant's motion to suppress evidence stemming from a traffic stop. *Id.* The parties debated whether the officer had a reasonable, articulable suspicion that the defendant violated either one of two statutes when his vehicle's tire crossed the fog line while driving. *Id.* at 590, 416 P.3d at 962. This Court analyzed the State's argument on the first statute, but found that the district court correctly ruled that the officer did not have a reasonable, articulable suspicion that the statute was violated. *Id.* at 590, 416 P.3d at 962. We did not reach the State's argument based on the second statute because the State failed to raise it below. *Id.* at 591, 416 P.3d at 963. And failure to raise it below "spell[ed] the fatal resolution of this argument on appeal." *Id.*

11

Most recently, this Court took the opportunity to clarify what constitutes a "new" appellate argument in *State v. Gonzalez*, 164 Idaho ___, 439 P.3d 1267 (2019). There, the defendant argued to the trial court that she was entitled to credit for time served from the time the warrant was issued. However, on appeal she argued that she was entitled to credit from the time of her hold on a warrant. *Id.* at ___, 439 P.3d at 1269. After an examination of *Garcia-Rodriguez* and *Brooke View*, we articulated the bounds of our review:

> We will not hold that a trial court erred in making a decision on an issue or a party's position on an issue that it did not have the opportunity to address. To be clear, both the issue and the party's position on the issue must be raised before the trial court for it to be properly preserved for appeal. In other words, *Brooke View* portrays a party riding on a horse that has been groomed and reshod for the appellate process, whereas *Garcia-Rodriguez* exemplifies a party entering the appellate process riding a similar-looking but entirely new horse. A groomed horse is expected on appeal, but a different horse is forbidden.

*Id.* at ___, 439 P.3d at 1271. Concluding that the defendant had inappropriately changed positions, we held that she failed to properly preserve her argument. *Id.* To hold otherwise would be "unfair to the State because it did not have the opportunity to address and respond at the district court level." *Id.* at ___, 439 P.3d at 1272. Likewise, it would be "inappropriate for this Court to rule that the district court erred by not considering evidence or argument not presented to it." *Id.*

It is under this framework that we assess the State's arguments.

3. This Court will not consider the State's plain-view argument on appeal because the State failed to preserve it below.

Returning to the case at hand, the State argues that the district court was correct to deny Hoskins's motion to suppress but denied it on the wrong basis. The State attempts to characterize the district court's consent analysis as "erroneous legal reasoning" by stating that the "correct legal reasoning" is the State's plain-view argument on appeal. Not only is this an inappropriate characterization, it also fails to explain why the State failed to advance the "correct legal reasoning" below. Initially, "erroneous legal reasoning" presupposes that the correct legal reasoning was presented, but disregarded by the trial court. This was not the case here. The State failed to present the "correct legal reasoning" to the trial court. Rather, the State relied upon an erroneous legal theory—i.e. consent—and the district court denied the motion to suppress on that basis. Because the State concedes that both its argument and the district court's decision were in error, we must accept that concession.

Thus, in order for this Court to affirm on the basis of the right-result, wrong-theory rule, the State's plain-view theory must have been properly preserved. Accepting only for the sake of argument that the State's plain-view theory is the "correct legal reasoning," the State still failed to preserve that theory. While the State can argue that it preserved the general issue of "exceptions to the Fourth Amendment's warrant requirement," this does not change the fact that the State presented the trial court with the consent exception rather than the plain-view doctrine. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). And by conceding that it did not raise its plain-view argument below, the State admits to improperly changing its legal position on this issue. This change of position is fatal because "both the issue and the party's position on the issue must be raised before the trial court" for the issue to be properly preserved. *State v. Gonzalez*, 164 Idaho at ___, 439 P.3d at 1271. Even though this Court would not be reversing the district court if we decided in the State's favor, this does not change the fact that the district court never had the chance to rule on the plain-view issue. Likewise, the record suggests that the proceedings developed in such a way that Hoskins had neither the incentive nor the opportunity to present evidence or argument concerning the plain-view theory. Thus, it would be "unfair to [Hoskins] because [he] did not have the opportunity to address and respond at the district court level." *Gonzalez*, 164 Idaho at ___, 439 P.3d at 1272.

This Court has placed a premium on counsel presenting the facts and law that it chooses to support its position in the trial court. *See State v. Perry*, 150 Idaho 209, 224, 245 P.3d 961, 976 (2010). Our adversarial system of justice demands active and agile counsel at all levels. And so, even assuming the State developed a sufficient factual record in this case, the State did not provide adequate argument because it failed to give the trial court and opposing counsel the appropriate Fourth Amendment exception to support its position. Accordingly, we reverse the district court's denial of Hoskins's motion to suppress.

We also deny the State's request that we remand this case for additional argument and factual findings in lieu of reversing the district court's denial of the motion to suppress. At a suppression hearing, the State must carry its burden to "demonstrate that the search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances." *Weaver*, 127 Idaho at 290, 900 P.2d at 198. Here, the State tells us that the proper exception is the plain-view theory. The State possessed the opportunity, facts, and evidence to present this theory when the matter was originally before the trial court. By its own

admission, it failed to do this. Thus, the State did not meet its burden to demonstrate the "well-recognized exception" which applied in this case. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). Devising a "correct" theory for the first time on appeal does not give the State a legal mulligan when it concedes that its original theory did not carry the burden below. The same logic holds true for the State's argument regarding exceptions to the exclusionary rule.

## V.  CONCLUSION

For the reasons stated above, we reverse the district court's denial of Hoskins's motion to suppress, vacate his judgment of conviction, and remand for further proceedings consistent with this opinion.

Justices BRODY, BEVAN, STEGNER, and MOELLER **CONCUR**.