**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44546**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2017 Opinion No. 48** |
| | ) | |
| **Plaintiff-Appellant,** | ) | **Filed: September 29, 2017** |
| | ) | |
| **v.** | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| **LARRY GLENN FENTON JR.,** | ) | |
| | ) | |
| **Defendant-Respondent.** | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Jay P. Gaskill, District Judge.

Order granting motion to suppress, <u>reversed</u> and <u>case remanded</u>.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for appellant. Russell J. Spencer argued.

Eric D. Fredericksen, State Appellate Public Defender; Reed P. Anderson, Deputy Appellate Public Defender, Boise, for respondent. Reed P. Anderson argued.

_____

GUTIERREZ, Judge

The State of Idaho appeals from the district court's order granting Larry Glenn Fenton Jr.'s motion to suppress, arguing that the district court erred by failing to correctly apply the doctrine of attenuation to the specific facts of this case. For the reasons set forth below we reverse and remand.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

On April 20, 2015, Fenton signed a probation agreement. The second clause of this agreement states, "During any contact with law enforcement personnel the defendant shall provide his identity, notify the law enforcement officer(s) that he is under supervision and provide the name of his supervising [probation officer]." The eleventh clause further provides

1

that Fenton "shall consent to the search of his person, residence, vehicle, personal property and other real property" by his probation officer or other law enforcement officer, waiving his Fourth Amendment rights as applied to these searches.

On February 28, 2016, Fenton was driving a vehicle that was seen leaving a parking lot known for drug activity. The police officer following Fenton called in his license plate as "Idaho plate 180728," which did not yield any results because dispatch ran the number with the incorrect county designation.[1] Because the officer was about 100 yards away from the vehicle, he asked dispatch to run the plate as 18072B, believing that perhaps he was misreading a B as an 8. This also yielded no results. After catching up with the vehicle, the officer provided the correct county designation. The officer did not receive a response to this third attempt at running the plates until after he had already completed the traffic stop.

Though the officer initiated the stop in order to address concerns regarding the registration, he concluded the stop by issuing two citations to Fenton. The first was for lack of a driver's license, and the second was for lack of proof of insurance. After the officer handed Fenton one of the citations, Fenton volunteered that he was on probation. The officer asked Fenton who his probation officer was, to which Fenton responded with a name that alerted the officer that Fenton was on felony probation. The officer returned to his patrol car and, following standard procedure, called the probation officer, relaying to the probation officer the facts leading up to the stop and the subsequent citations. Upon returning to Fenton's vehicle, the officer gave Fenton the second citation, thus concluding the traffic stop. The officer then informed Fenton that the probation officer was coming to speak with Fenton and that the probation officer wanted Fenton to stand by. When the probation officer arrived, she had Fenton step out of the vehicle and sit on the sidewalk. The probation officer then requested the officer's assistance in conducting a search of the vehicle. The officer found methamphetamine in the vehicle.

The State charged Fenton with trafficking in methamphetamine. Fenton moved to suppress the evidence acquired during the probation search, claiming that both his traffic stop and probation search were unlawful. The district court held a hearing on the suppression motion and then granted Fenton's suppression motion on the ground that the officer lacked reasonable

---

[1] The officer testified that dispatch had interpreted his words--"Idaho plate 180728"--as "Ida" 180728.

suspicion to conduct the traffic stop. The State moved for reconsideration based on the doctrine of attenuation. The district court denied the motion for reconsideration. The State timely filed a notice of appeal from the order granting Fenton's motion to suppress.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

The State does not dispute the district court's determination that the officer lacked a sufficient basis to stop Fenton. Thus, we will presume that evidence obtained after the officer stopped Fenton, during the probation search, was obtained pursuant to unlawful police conduct. However, the State argues that the evidence should not be suppressed because the causal chain between the unlawful conduct and discovery of the evidence was sufficiently attenuated to dissipate the taint of the unlawful conduct.

In support of its attenuation argument, the State cites two cases dealing with the attenuation doctrine in cases where the police were made aware of active arrest warrants after engaging in unlawful conduct. *Utah v. Strieff*, ___ U.S. ___, ___, 136 S. Ct. 2056, 2061-64 (2016); *State v. Page*, 140 Idaho 841, 845-47, 103 P.3d 454, 458-60 (2004). The State asserts that the circumstances in this case are "at least as strong" as in cases involving an active arrest warrant. Fenton's response is to attempt to distinguish arrest warrant cases from probation search cases for purposes of applying the attenuation doctrine, arguing that police officers have a duty to arrest persons with outstanding warrants, while probation searches are discretionary. Fenton relies on a California Court of Appeals decision that held probation search conditions are

3

a less compelling intervening circumstance than arrest warrants because probation searches are discretionary. *People v. Bates*, 165 Cal. Rptr. 3d 573, 581-82 (Cal. Ct. App. 2013).[2]

The United States and Idaho Constitutions prohibit unreasonable searches and seizures of persons or property. U.S. CONST. amend IV; IDAHO CONST. art. I, § 17. If evidence is obtained in violation of the Fourth Amendment, the exclusionary rule bars the admission of such evidence. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). However, not all evidence is "fruit of the poisonous tree" simply because it would not have been discovered "but for" the illegal actions of the police. *Id.* at 487-88. To determine whether to suppress evidence as fruit of the poisonous tree, the court must inquire into whether the evidence was recovered as a result of the exploitation of the unlawful conduct or instead by means sufficiently distinguishable to be purged of the primary taint. *United States v. Green*, 111 F.3d 515, 520 (7th Cir. 1997). The State bears the burden of showing that the unlawful conduct did not taint the evidence. *State v. Cardenas*, 143 Idaho 903, 908-09, 155 P.3d 704, 709-10 (Ct. App. 2006). The attenuation doctrine--whether the causal chain has been sufficiently attenuated to dissipate the taint of the unlawful conduct--has been used to support the admission of evidence such as voluntary confessions obtained after unlawful arrests. *Brown v. Illinois*, 422 U.S. 590, 598-99, 603 (1975).

There are three factors for a court to consider when determining whether unlawful conduct has been adequately attenuated. *Id.* at 603-04. The factors are: (1) the elapsed time between the misconduct and the acquisition of the evidence, (2) the occurrence of intervening circumstances, and (3) the flagrancy and purpose of the improper law enforcement action. *Id.*; *see Page*, 140 Idaho at 846, 103 P.3d at 459. All three factors need not be resolved in favor of one party. *United States v. Wellins*, 654 F.2d 550, 554 (9th Cir. 1981). The test only requires a balancing of the relative weights of all the factors, viewed together, in order to determine if the police exploited an illegality to discover evidence. *United States v. Seidman*, 156 F.3d 542, 549-50 (4th Cir. 1998).

## A.     Temporal Proximity

The first factor, temporal proximity between the initially unlawful stop and the discovery of evidence, favors suppressing the evidence. The United States Supreme Court has declined to

---

[2]     *But see People v. Durant*, 140 Cal. Rptr. 3d 103, 110 (Cal. Ct. App. 2012) (concluding that "any illegality in the initial traffic detention was attenuated by appellant's probation search condition").

find that this factor favors attenuation unless "substantial time" elapses between an unlawful act and when the evidence is obtained. *Kaupp v. Texas*, 538 U.S. 626, 633 (2003) (per curiam). The Idaho Supreme Court has indicated that a week is a sufficient amount of time to purge a defendant's voluntary statements of the taint of prior compelled statements. *State v. Radford*, 134 Idaho 187, 194, 998 P.2d 80, 87 (2000). At the other end of the spectrum, the United States Supreme Court recently suggested that anything "less than two hours" was too short of an interval and thus weighed in favor of suppression. *Strieff*, ___ U.S. at ___, 136 S. Ct. at 2062 (finding that the temporal proximity weighed in favor of suppression because the unlawful conduct and discovery of the evidence occurred within minutes of each other). In this case, the discovery of evidence occurred approximately fifty minutes after the illegal stop was initiated. Though this is more than the handful of minutes in *Strieff*, it is within the two-hour mark referenced by the Court. Accordingly, the temporal proximity factor favors suppression in this case.

## B. Intervening Circumstances

As to the second factor, both parties agree that Fenton's disclosure of his probationary status is an intervening circumstance. Fenton's disclosure of his probationary status and probation officer's name to the officer was sufficiently independent of the officer's unlawful actions to constitute an intervening act leading to the discovery of the methamphetamine. Fenton's disclosure was made pursuant to his probation agreement. This Court has already held that probation agreements are entered into voluntarily, as the probationer always has the option to decline probation. *State v. Josephson*, 125 Idaho 119, 121-22, 867 P.2d 993, 995-96 (Ct. App. 1993).

Moreover, a third party's discretionary act can also constitute an intervening circumstance. *United States v. Ceccolini*, 435 U.S. 268, 279 (1978). Here, the probation officer was from a separate agency and was not involved in the illegal stop. The probation officer requested that the officer on the scene relay a message to Fenton: for Fenton to remain where he was. The probation officer further enlisted the assistance of the officer in searching Fenton's vehicle. We have previously held that if a parole or probation officer is justified in making a search he or she may enlist the aid of police officers in performing that duty. *State v. Armstrong*, 158 Idaho 364, 370, 347 P.3d 1025, 1031 (Ct. App. 2015).

Accordingly, we conclude that Fenton's disclosure of his probationary status and his probation officer's decision to conduct the search are significant intervening circumstances that weigh against suppression.

## C. Flagrancy and Purpose of the Officer's Actions

The parties' principal disagreement lies with the third factor, which is the flagrancy and purpose of the police misconduct. "In the [Fourth Amendment] context, the 'single and distinct' purpose for the exclusionary rule is deterrence of police violations of that constitutional protection against unreasonable searches and seizures." *United States v. Brookins*, 614 F.2d 1037, 1046-47 (5th Cir. 1980) (quoting *Tehan v. United States ex rel. Shott*, 382 U.S. 406, 413 (1966)). The "exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring v. United States*, 555 U.S. 135, 144 (2009). Application of the exclusionary rule, however, "does not serve this deterrent function when the police action, although erroneous, was not undertaken in an effort to benefit the police at the expense of the suspect's protected rights." *United States v. Fazio*, 914 F.2d 950, 958 (7th Cir. 1990).

Flagrant and purposeful conduct occurs when the police misconduct is investigatory in design and is executed "in the hope that something might turn up." *Brown*, 422 U.S. at 605. Systemic error or reckless disregard for constitutional requirements constitutes flagrant or purposeful misconduct. *Herring*, 555 U.S. at 147. Conversely, if an officer engages in misconduct unwittingly, the conduct is unlikely flagrant or purposeful. *See Strieff*, ___ U.S. at ___, 136 S. Ct. at 2063; *see also United States v. Washington*, 387 F.3d 1060, 1075-76 (9th Cir. 2004). *But see, e.g.*, *Kaupp*, 538 U.S. at 628, 633 (finding flagrant violation where a warrantless arrest was made in the arrestee's home after police were denied a warrant and at least some officers knew they lacked probable cause). Similarly, police mistakes that are the result of an isolated instance of negligence are not flagrant or purposeful. *Strieff*, ___ U.S. at ___, 136 S. Ct. at 2063.

The parties disagree on whether the actions taken by the officer in running the license plate and effectuating the stop amount to flagrant or purposeful conduct. The State emphasizes that the officer did not engage in systemic unlawful conduct, but made an isolated mistake. Fenton counters that the conduct was "deliberate, reckless, or grossly negligent" and would therefore be deterred by suppression. The fact that the officer ran the plates three times suggests

this was not a deliberate ploy to stop Fenton. Whether attempting to read a license plate from 100 yards away is negligent or *grossly* negligent is less clear, but the officer actually read the plate accurately on the first attempt, but dispatch misunderstood what "Idaho" meant. The officer's act of running the plate a second time to verify he correctly conveyed the license plate number to dispatch on his first attempt also does not support labeling the officer's conduct as grossly negligent. Moreover, other courts have determined that more egregious conduct, such as exaggerating and mischaracterizing evidence when applying for a search warrant, does not rise to the level of gross negligence. *See, e.g.*, *United States v. Raymonda*, 780 F.3d 105, 119-20 (2d Cir. 2015). Accordingly, we decline to hold that the officer's conduct was deliberate, reckless, or grossly negligent.

In this case, the officer's conduct was, at worst, negligent. Based on the facts contained in the record, application of the exclusionary rule in this situation would have no deterrent effect on the behavior of the officer. Because the officer here pursued a bone fide investigation into the registration issue and did not purposefully engage in unlawful conduct, this factor weighs against suppression.[3]

**IV.**

**CONCLUSION**

The doctrine of attenuation applies under the facts of this case because, after balancing the relative weights of all three factors, we hold that the officer did not exploit an illegality to discover evidence. Therefore, the district court's order granting Fenton's motion to suppress is reversed and the case remanded for further proceedings.

Chief Judge GRATTON and Judge HUSKEY **CONCUR**.

---

[3] We must note that a suspect's probationary status is not a panacea for unlawful police conduct. If an officer goes on a suspicionless fishing expedition, either knowing the driver is a probationer or merely hoping that the driver is on probation, any evidence found in a subsequent probation search may very well be suppressed.

7