**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 47251, 47252 & 47253**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: April 6, 2021 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| ROBERT SCOTT ASHBEY, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Scott L. Wayman, District Judge.

Judgments of conviction for two counts of possession of a controlled substance, <u>vacated</u>; judgment of conviction for one count of introduction of contraband into a correctional facility, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jeff Nye, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

In these consolidated cases, Robert Scott Ashbey appeals from his judgments of conviction for two counts of possession of a controlled substance and one count of introduction of contraband into a correctional facility. We vacate the judgments of conviction for possession of a controlled substance and affirm the judgment of conviction for introduction of contraband into a correctional facility.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

A night-shift officer received a report that a vehicle with two individuals just left an apartment from which Ashbey was reportedly selling drugs. The officer located the vehicle and

1

stopped it for a turn-signal violation. The officer then received identification from the vehicle's two occupants and recognized the passenger as Ashbey. After observing a metal pipe that could serve as an improvised weapon, the officer ordered the driver to exit the vehicle and obtained permission to search her person. While searching the driver, the first officer instructed a second officer who had responded to the scene with a drug dog to conduct a drug-dog sniff of the vehicle after removing Ashbey. While the first officer monitored Ashbey and the driver to ensure the second officer's safety, the drug dog alerted to the presence of drugs in the vehicle. A search of the vehicle yielded a plastic baggie with what appeared to be trace amounts of methamphetamine.

The officers seized the plastic baggie but did not arrest Ashbey. The officer who initiated the stop, however, later obtained a warrant for Ashbey's arrest based upon the drugs found in the vehicle. Upon Ashbey's arrest, he possessed drugs, drug paraphernalia, and someone else's credit card. While Ashbey was in custody at the county jail, officers received a tip that there were drugs in his cell. A search of Ashbey's belongings yielded a plastic baggie of heroin.

As a result of these events, the State charged Ashbey with offenses in three separate cases. In Docket No. 47251, Ashbey was charged with possession of a controlled substance for the drugs found during the traffic stop. In Docket No. 47252, Ashbey was charged with possession of a controlled substance, possession of drug paraphernalia, and grand theft by possession of stolen property for the items found on his person when he was arrested on the warrant arising from the initial traffic stop (Docket No. 47251). Finally, in Docket No. 47253, Ashbey was charged with possession of a controlled substance and introducing contraband into a correctional facility for the heroin found in his belongings at the jail.

Ashbey filed a motion to suppress in each case, arguing that the evidence which formed the bases of the charges in Docket Nos. 47252 and 47253 resulted from the unlawful extension of the traffic stop in Docket No. 47251. The district court denied the motions, concluding that officers were justified in extending the traffic stop to conduct a drug investigation and, alternatively, that the stop would not have been completed before the drug-dog alert even if the first officer had not stopped to safeguard the officer who was conducting the drug-dog sniff.

After the denial of his suppression motions, Ashbey entered conditional guilty pleas in all three cases, retaining the right to appeal the denial of his suppression motions. In Docket Nos. 47251 and 47252, Ashbey pled guilty to one count of possession of a controlled substance in

each case. I.C. § 37-2732. In Docket No. 47253, Ashbey pled guilty to introduction of contraband into a correctional facility. I.C. § 18-2510. In exchange for his guilty pleas, the State dismissed the other charges. Ashbey appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Ashbey argues that the district court erred by denying his suppression motions because officers unlawfully extended the traffic stop to conduct a drug-dog sniff. The State responds that no unlawful extension occurred and that, even if one did, the attenuation doctrine precludes the exclusion of the heroin found in Ashbey's jail cell.[1] We hold that the district court erred by concluding that no unlawful extension occurred. However, we further hold that, pursuant to the attenuation doctrine, Ashbey is not entitled to suppression of the heroin found in his jail cell.

### A. Unlawful Extension

Although the seizure of the evidence Ashbey seeks to suppress occurred at different times and locations, he challenges all the evidence under a single theory. Ashbey contends that the drugs found during the traffic stop, the contraband and credit card found on his person at the time of his

---

[1] The State asserts that the attenuation doctrine also applies to the evidence obtained in relation to Docket No. 47252, but acknowledges that such an argument was not preserved. Thus, our resolution of Ashbey's unlawful extension claim resolves the suppression issue for Docket Nos. 47251 and 47252, but not Docket No. 47253.

subsequent arrest, and the drugs found among his belongings in his jail cell all resulted from the unlawful extension of the traffic stop. Consequently, our review focuses on that contention.

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). In the traffic stop context, authority for a seizure ends when the tasks related to the stop are, or reasonably should have been, completed. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Additionally, officers may not deviate from the purpose of the traffic stop by investigating, or taking precautions incident to investigating, other crimes without independent reasonable suspicion. *State v. Still*, 166 Idaho 351, 356, 458 P.3d 220, 225 (Ct. App. 2019).

Although a drug-dog sniff cannot fairly be characterized as part of an officer's traffic mission, it is well-established that a drug-dog sniff conducted during a lawful traffic stop is constitutionally permissible if it is executed in a reasonable manner and does not itself infringe upon a constitutionally protected privacy interest. *State v. McGraw*, 163 Idaho 736, 739, 418 P.3d 1245, 1248 (Ct. App. 2018). Stated differently, an officer may conduct a drug-dog sniff during a lawful traffic stop without violating the Fourth Amendment so long as the sniff does not prolong the traffic stop beyond "the time needed to handle the matter for which the traffic stop was made." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015). To extend a traffic stop that was based upon a traffic violation in order to conduct a drug-dog sniff, there must be reasonable suspicion of independent criminal activity to justify the sniff. *See Still*, 166 Idaho at 356, 458 P.3d at 225.

The district court determined that officers lawfully conducted the drug-dog sniff because they had reasonable suspicion Ashbey was trafficking drugs. To support this conclusion, the district court found that an officer lawfully stopped the vehicle in which Ashbey was a passenger for a turn-signal violation after receiving a report the vehicle just left an apartment that Ashbey reportedly used to sell drugs. The district court further found that the officer recognized Ashbey

4

upon receiving his identification and observed what appeared to be an improvised weapon (a metal pipe partially wrapped with cord) in the vehicle. As a safety precaution, the officer ordered the driver out of the vehicle and walked her back to his patrol vehicle, where a second officer with a drug dog was waiting. While searching the driver, the first officer instructed the second officer to remove Ashbey from the vehicle and then conduct a drug-dog sniff of the vehicle. After searching the driver,[2] the first officer monitored Ashbey and the driver to ensure the second officer's safety while he completed the dog sniff and conversed with the two as he did so. During this period of time, the dog alerted to the presence of drugs in the vehicle and a search of the passenger compartment yielded a plastic baggie containing trace amounts of methamphetamine. Based upon these factual findings, the district court concluded that the first officer's decision to act as cover for the second officer instead of running checks on the driver's information was reasonable in light of the safety concerns presented and did not unlawfully extend the traffic stop.[3] Consequently, the district court denied Ashbey's motions to suppress.

Ashbey argues that the district court erred by concluding that officers had reasonable suspicion to extend the stop and conduct a drug investigation. Specifically, Ashbey contends that the State failed to show that the "street sources" who implicated him in drug trafficking were sufficiently reliable to support an investigative detention. We agree.

---

[2]     Footage from the first officer's body camera, which was admitted as an exhibit during the suppression hearing, indicates that he found a nondescript blue pill in the driver's coin pocket. When asked about the pill, the driver replied that she found it on her bathroom floor after her roommate left and was going to "look that up" because she did not know what it was. However, the officer did not testify regarding this discovery during the suppression hearing, nor did the district court make any factual findings related to the pill.

[3]     The district court alternatively found that no Fourth Amendment violation occurred because, even if the first officer had pursued "all the things normally done at a traffic stop," instead of monitoring Ashbey and the driver, "the drug dog still had the opportunity and within the time frames expressed in the video, actually did do the search. By the time all of that could have been done under most circumstances." Ashbey contends that this alternative reasoning conflicts with controlling authority. We agree. Whether the drug dog would have alerted before the first officer *could* have completed the tasks related to the traffic stop is irrelevant. *See State v. Linze*, 161 Idaho 605, 608-09, 389 P.3d 150, 153-54 (2016). The critical question is whether an officer has abandoned the original purpose of the traffic stop. *Id.* Consequently, we reject the district court's alternative reasoning.

5

Tips from informants about suspected criminal activity can support reasonable suspicion. *State v. Bishop*, 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2009). To justify an investigative detention, however, the tip must bear sufficient indicia of reliability in light of the totality of the circumstances. *Id.*

> Factors indicative of reliability include whether the informant reveals his or her identity and the basis of his or her knowledge, whether the location of the informant is known, whether the information was based on first-hand observations of events as they were occurring, whether the information the informant provided was subject to immediate confirmation or corroboration by police, whether the informant has previously provided reliable information, whether the informant provides predictive information, and whether the informant could be held criminally liable if the report were discovered to be false.

*Id.* at 812, 203 P.3d at 1211. Anonymous tips that merely describe suspects and implicate them in a crime generally do not, by themselves, support reasonable suspicion. *See id.*

During the suppression hearing, the officer who initiated the traffic stop testified that police were surveilling the apartment Ashbey was seen leaving because "street sources" had advised that he used it to sell drugs. However, neither the identity of these street sources, nor the precise content of the information they provided was established during the suppression hearing. Thus, the record does not indicate that the information officers had implicating Ashbey in drug trafficking bore any of the indicia of reliability identified above. To the contrary, the information officers possessed resembles an anonymous tip that merely identifies a suspect and implicates him or her in a crime, which would not support reasonable suspicion. *See id.*

Even when considered in conjunction with the other facts the officers learned during the course of the traffic stop, there was not reasonable suspicion to extend the stop for a drug investigation. According to Ashbey, the officer who initiated the traffic stop "suspended his traffic mission to act as cover for the dog sniff," rendering his actions "no longer justified by the reasonable suspicion of the traffic violation." Consequently, our analysis will focus on whether officers developed sufficient additional facts to support reasonable suspicion before that point. After initiating the stop, officers identified Ashbey as a passenger in the vehicle, observed what they believed was an improvised weapon (a metal pipe partially wrapped with cord), and discovered an unidentified blue pill in the driver's pocket. However, none of the officers present at the scene testified that, in their training and experience, these potentially innocuous facts were

6

somehow indicative of drug activity. Thus, we cannot conclude that these facts gave the officers reasonable suspicion of such activity. *See State v. Grantham*, 146 Idaho 490, 497, 198 P.3d 128, 135 (Ct. App. 2008) (noting that seemingly innocent facts may provide reasonable suspicion when taken together and combined with officer training and experience).

For its part, the State does not argue that officers had reasonable suspicion to extend the traffic stop to conduct a drug investigation. Rather, the State contends that officers conducted the drug-dog sniff while *simultaneously* pursuing the original mission of the traffic stop. As previously stated, a drug-dog sniff conducted during a lawful traffic stop does not violate the Fourth Amendment as long as the sniff does not prolong the traffic stop. *Rodriguez*, 575 U.S. at 350. According to the State, the officer who monitored Ashbey and the driver remained "dutifully engaged in the stop's traffic investigation" by "attending to related safety concerns" while the second officer conducted the drug-dog sniff. We disagree.

During the suppression hearing, the officer who initiated the traffic stop testified that, after searching the driver he "chose not to retreat back to [his] vehicle . . . . Instead, I allowed the [other officer] to conduct his exterior sniff of the vehicle while I essentially was safety and stood with both [Ashbey] and the driver." The officer's body camera footage shows that during this time the following conversation occurred:

| | |
|---|---|
| Officer: | Nothing illegal inside the vehicle? |
| | [Ashbey and the driver shake their heads "no."] |
| Officer: | And you're unsure of the blue pill that was found inside of your coin pocket? |
| Driver: | No. I don't know what that is. |
| Officer: | Ok. |
| Driver: | Like I said, I found it in my bathroom, and I was going to look it up. |
| Officer: | Ok, alright. |
| | [The officer turns toward Ashbey who is holding his cellphone.] |
| Officer: | Do me a favor, dude? While we're standing here, I do not want you on your phone. It's an officer safety issue at this point. I don't want you calling anybody, texting anybody--while you are here. Can we agree to that? |
| Ashbey: | Yeah. |
| Officer: | Thank you. |
| Driver: | Can I know, like, if I didn't use my blinker, what's going on? |
| Officer: | So right now, we're just going to make sure there's nothing else inside the vehicle, so he's going to use his canine partner. If the dog doesn't alert to the vehicle then you're on your way. If he does alert |

7

> to the vehicle it does warrant us a search of the vehicle. Ok? And,
> but if there's nothing in there, you got nothing to worry about.

As the officer finished his reply to the driver, the drug dog alerted to the presence of drugs in the vehicle. According to the State, the portions of the above conversation addressing the blue pill found on the driver and Ashbey's cellphone use relate to issues incident to the traffic stop. The State further asserts that any time the officer spent addressing the driver's final question is attributable to her and irrelevant to whether *officers* extended the stop. The State's arguments are unavailing.

As stated above, the drug-dog sniff was neither related to the original mission of the traffic stop nor supported by independent reasonable suspicion. However, when the first officer instructed the second officer to conduct the drug-dog sniff, the necessity of the first officer providing security for the drug-dog sniff was apparent. To be certain, the first officer testified that was his purpose in monitoring Ashbey and the driver. Officers cannot deviate from the original purpose of a traffic stop to take precautions incident to investigating other crimes without independent reasonable suspicion. *See State v. Linze*, 161 Idaho 605, 609, 389 P.3d 150, 154 (2016) (holding that delaying traffic stop for two and a half minutes while performing a back-up function for a drug-dog sweep violated the Fourth Amendment). That is what the first officer did while monitoring Ashbey and the driver during the drug-dog sniff. Consequently, the district court erred in concluding that the traffic stop was not unlawfully extended and denying Ashbey's suppression motions on this basis.

**B.     Attenuation**

Having determined that the district court erred in concluding that no unlawful extension of the traffic stop occurred, we must consider the State's alternative attenuation arguments. The State argues that the attenuation doctrine applies to preclude exclusion of the heroin found in Ashbey's jail cell.[4] We agree.

---

[4]     We note that the district court did not rely upon the attenuation doctrine as an alternative ground for denying Ashbey's motion to suppress the heroin found in his jail cell. However, the State raised the issue in its written opposition to Ashbey's motion below. Consequently, the issue is preserved for review. *See State v. Hoskins*, 165 Idaho 217, 222, 443 P.3d 231, 236 (2019). Accordingly, we may affirm the denial of Ashbey's suppression motion through application of the right result-wrong theory rule. *State v. Sarbacher*, 168 Idaho 1, 9, 478 P.3d 300,

Evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule, which prohibits the use of unlawfully obtained evidence during trial. *State v. Cohagan*, 162 Idaho 717, 720, 404 P.3d 659, 662 (2017). The exclusionary rule compels suppression of both evidence obtained as a direct result of an illegal search or seizure and derivative evidence discovered after the illegal police conduct. *Id.* However, the attenuation doctrine permits the use of evidence otherwise inadmissible due to police misconduct when the causal chain between the misconduct and the discovery of the challenged evidence is sufficiently attenuated. *State v. Fairchild*, 164 Idaho 336, 345, 429 P.3d 877, 886 (Ct. App. 2018). Idaho courts apply a three-factor test to evaluate attenuation: (1) the elapsed time between the misconduct and the acquisition of the evidence; (2) the occurrence of intervening circumstances; and (3) the flagrancy and purpose of the police misconduct. *Id.*

The Fourth Amendment violation in this case is the unlawful extension of the traffic stop, which resulted in the discovery of the plastic baggie containing methamphetamine residue. Based upon this evidence, officers later obtained a warrant for Ashbey's arrest. While in law enforcement custody after his arrest on that warrant, officers discovered heroin among Ashbey's belongings in his jail cell after receiving a tip from another inmate. The issue we must resolve is whether the unlawful traffic stop tainted the heroin found in Ashbey's jail cell. To do this, we apply the three-factor test identified above.

When applying the first factor, the relevant time is the period between the police misconduct and the discovery of the challenged evidence. *Id.* at 347, 429 P.3d at 888. Generally, only the substantial passage of time favors attenuation. In this case, nearly fifty days elapsed between the traffic stop and the discovery of the heroin in Ashbey's jail cell. This is a substantial passage of time favoring attenuation. *See United States v. Gross*, 662 F.3d 393, 402 (6th Cir. 2011) (holding temporal proximity of two months "weighs significantly toward attenuation").

---

308 (2020) (holding that where an order of a lower court is correct, but based upon an erroneous theory, the order will be affirmed upon the correct theory); *Hoskins*, 165 Idaho at 226, 443 P.3d at 240 (observing that application of the right-result-wrong-theory rule requires preservation of arguments supporting application of the correct legal theory).

The second factor also favors attenuation. A lawful search supported by information unconnected to the prior illegality can constitute an intervening circumstance favoring attenuation. *See State v. Hoak*, 107 Idaho 742, 750, 692 P.2d 1174, 1182 (1984) (holding that because information set forth in warrant affidavit was obtained prior to, and independent of, the arrest, evidence seized pursuant to the warrant was not obtained by exploitation of any illegality). The officers who searched Ashbey's jail cell were not from the same law enforcement agency as those who conducted the traffic stop and were prompted to search by a tip from another inmate. These factors both favor attenuation. *See State v. Fenton*, 163 Idaho 318, 322, 413 P.3d 419, 423 (Ct. App. 2017) (observing that discretionary acts by third parties can constitute intervening circumstances).

Finally, the third factor also favors attenuation. Only flagrant and purposeful police misconduct supports the exclusion of evidence. *Cohagan*, 162 Idaho at 723, 404 P.3d at 665. Misconduct is flagrant and purposeful when it is investigatory in design and executed "in the hope that something might turn up." *Brown v. Illinois*, 422 U.S. 590, 605 (1975). Systemic error or reckless disregard for constitutional requirements constitutes flagrant or purposeful misconduct. *Fenton*, 163 Idaho at 322, 413 P.3d at 423. Unwitting misconduct, however, is unlikely flagrant or purposeful. *Id.* Police mistakes resulting from isolated instances of negligence are not flagrant or purposeful. *Id.* During the suppression hearing, the district court noted that the immediate presence of an officer with a drug dog at the scene of the traffic stop was likely "no accident," implying that the traffic stop may have been a pretext to conduct the drug-dog sniff. In other circumstances, this might favor exclusion. However, the record does not suggest that officers believed they lacked reasonable suspicion to conduct a drug investigation or that the decision to conduct the drug-dog sniff arose from a systemic error. Moreover, it is implausible that officers would purposely engage in a suspicionless drug-dog sniff in the hope that a suspect would later commit an independent crime while in custody. Consequently, we decline to hold that the challenged conduct in this case was flagrant or purposeful.

In sum, the evidence in the record shows that all three factors of the attenuation analysis favor attenuation. Thus, we hold that the attenuation doctrine applies to preclude suppression of the heroin found in Ashbey's jail cell.

## IV.
## CONCLUSION

Officers extended the traffic stop of the vehicle to conduct a drug-dog sniff without independent reasonable suspicion to support the sniff. Thus, Ashbey has shown that the district court erred in denying his motions to suppress on this basis. However, the attenuation doctrine applies to preclude suppression of the heroin discovered during a search of his jail cell following Ashbey's arrest on the warrant arising from the initial traffic stop. Accordingly, Ashbey's judgments of conviction for two counts of possession of a controlled substance in Docket Nos. 47251 and 47252 are vacated, but his judgment of conviction for one count of introduction of contraband into a correctional facility in Docket No. 47253 is affirmed.

Chief Judge HUSKEY and Judge BRAILSFORD, **CONCUR**.

11